T. H. BROWNELL v. TROY & BOSTON RAILROAD COMPANY.

*Obstructing Highway. Evidence. Practice.*

1. The defendant railroad is liable for injuries sustained by the plaintiff while travelling on a highway, which injuries were caused by its leaving obstructions on the *margin* of the highway, though it had never been surveyed, but had been used by the travelling public more than twenty years. A highway by dedication may have a margin.

2. If it is claimed that there was no evidence to support the finding of the jury, the question should be presented in the County Court and before judgment on the verdict.

3. On cross-examination one of the plaintiff's witnesses testified that he with another man, at the request of the defendant's wood-agent, went to see the plaintiff, to ascertain what he would settle his claim for, and reported his terms to said agent. The agent was then called and denied the conversation, and also said that he had no authority to request anyone to see the plaintiff ; and, on cross-examination, that he did not assume such authority. The plaintiff was then allowed to show that at said interview the wood-agent gave them to understand that he represented the defendant. *Held*, no error.

ACTION for injuries caused by the defendant's having obstructed a highway. Plea, general issue. Trial by jury, June Term, 1881, Bennington County, TAFT, J., presiding. Verdict for the plaintiff.

The plaintiff's testimony tended to prove that at a certain point in the town of Pownal, about a mile south of the village of South Pownal, said highway passes on a curve around the foot of a hill containing a deposit of gravel, and said railroad passes on a like curve around the foot of the same hill, outside of the highway. That said railroad was laid out and constructed at this point directly upon the highway as theretofore used, and the latter was thereby crowded easterly into the narrow space between said railroad and said hill, and as the same was used by the public from the time of the construction of said railroad down to and at the time the plaintiff received the injury complained of, said highway at said point ran for a distance of about forty rods close beside said railroad and between the railroad fence and the foot of said hill ; that in the spring of 1876, the defendant constructed a spur or side-track leading from its railroad across said highway, near the north end of said forty-rod strip, and extending thence south-

erly around the foot of said hill between said highway and said gravel bank, and commenced to load said gravel upon its cars upon said side track and haul the same away; that in the course of so doing, and while defendant was carrying on said work with its own employes, a large amount of debris consisting of stones and masses of concrete too large to be loaded and used, and of stumps and roots of trees standing and growing upon said side hill were moved across said side track and deposited along the side of said travelled highway, thereby crowding said travelled highway closer to said main railroad track than before, and narrowing the space available for the passage of teams therein; and that among the debris so deposited was a large root which caused the overturning of plaintiff's wagon, as hereafter stated.

The plaintiff's testimony further tended to show that at the time he received his injury a large amount of gravel had been removed from said gravel bank, and there were then two side or spur tracks extending into said gravel pit, and that on such side track nearest the highway were standing twenty-eight gravel cars, platform cars, and coal cars, the one nearest the crossing of the highway over said side track being a coal car belonging to the defendant and placed there by the defendant, the end of which was only ten feet from the centre of the travelled path of the highway, and at a point in said highway, where the plaintiff's evidence tended to show that the same had been used as a public highway for more than sixty years, which car was considerably within the limits of said original highway. Plaintiff's evidence further tended to show that on the fifteenth day of April, 1878, he was driving with his horse and wagon along said highway, and as he approached said forty-rod strip of road, knowing that a regular train from the west was about due, and being acquainted with the condition of said highway and its proximity to the railroad, stopped his horse and listened; that he neither saw nor heard any approaching train, and believing that the cars were not coming, started to drive through said forty-rod strip; that as he was passing over it and when he had reached a point some eight or ten rods short of the position of said coal-car, he heard a train coming rapidly from the west which immediately came in sight around the curve very near him, and almost directly in front of his horse; that the horse was frightened and the plaintiff was unable to control him; and that he swerved from the travelled path of said highway to the right, running directly towards said coal car standing across the same, where he wheeled around to the right and ran back along the easterly side of said forty-rod strip and of the travelled track of the highway therein until the wheels of the wagon struck the

said root with such force that the wagon was overturned with great violence, the plaintiff thrown out towards the railroad fence and severely injured and the wagon broken ; that but for the position of said car as aforesaid, his horse would not have turned round, but would have continued along the side of the highway in safety ; and that said root lay within a few feet of the travelled path of said highway and about fifteen rods southerly from said car, a large amount of said other debris being scattered in the same vicinity and along the side of said highway southerly from said root.

Defendant's testimony tended to show that plaintiff's horse and wagon did not get out of the travelled track of the highway at all, but that the horse being frightened by the approaching train suddenly turned round in the travelled track and tipped the wagon over and threw plaintiff out, and that neither the root, debris or cars contributed at all to the injury of the plaintiff.

The court charged as to the defendant's request mentioned in the opinion as follows :

" A question has been made with reference to the highway,— the existence of it as a legal highway, whether it is such an one that plaintiff would have a right to recover on account of these nuisances or obstructions being placed in it. There is no testimony in the case of the original survey of the road, or where the limits of it are ; and there is no testimony, if I understand it correctly, as to where the lines of the railroad are. . . . . I think the fact, that there has been no survey of it and no testimony of it with reference to where the lines of the highway are in that respect, is no bar to the recovery of the plaintiff, provided you find that there was a public highway travelled by the public, used by the public, and that these obstacles were upon the highway that was so used by the public at that time. If you find these facts with reference to it, it is no bar to recovery that there is no recorded survey, or that the plaintiff has not shown to you the exact location of the boundaries or lines."

The other facts are sufficiently stated in the opinion of the court.

*H. A. Harman, J. K. Batchelder* and *T. Sibley*, for defendant.

When a highway is gained, not by survey and paying damages, but by gradual encroachment, does the legal highway extend beyond the limits of actual use ? Is there, beyond this, a space not

wrought for travel but still within the legal highway limits, which the land-owner is bound to keep free from obstruction, as he is not bound to keep the rest of his land ?

This mooted question was sharply defined by the defendant's request to charge. The court was asked to rule that such highways have no margins ; but this request was refused, and instead, the jury were merely told that if there was a highway and these obstacles were upon it, the plaintiff need not show where the lines of that highway were, thus leaving to the jury to decide that pure question of law which the defendant has brought here for revision. It is error to leave law questions to the jury. *Collamer* v. *Langdon*, 29 Vt. 32 ; *Driggs* v. *Burton*, 33 Vt. 124 ; 32 Vt. 607.

Robinson's statements inadmissible. Story Agency, ss. 134–5 ; 1 Greenl. Ev. ss. 113, 449 ; 2 Ib. 53 ; *Brigham* v. *Peters*, 1 Gray, 139.


*Prout & Walker*, for plaintiff.

The right of action is complete both at common law and by statute. *Abbott* v. *Mills*, 3 Vt. 521 ; R. L. ss. 3131, 3132, 3133.

The court cannot exclude " margins " in such a case as matter of law. An obstruction adjacent to a travelled road or path, dangerous in case of sudden casualty, is a nuisance. *Beck* v. *Carter*, 68 N. Y. 283.

In the present case there was evidence that the result of the depositing the debris, including the root in question, was the " crowding said travelled highway closer to said main railroad track than before, and narrowing the space available for the passage of teams therein." The jury might well find, as the fact was, that plaintiff was overturned upon what had been travelled road for twenty years prior to the working of this gravel pit. The request overlooked this evidence altogether.

Even without this proof, however, the request was wholly incorrect. Wood on Nuisances, ss. 240–290 ; *State* v. *Wilkinson*, 2 Vt. 480 ; *State* v. *Atkinson*, 24 Vt. 448, 459 ; *Prouty* v. *Bell*, 44 Vt. 72 ; *Bagley* v. *Ludlow*, 41 Vt. 425 ; *Coates* v. *Canaan*, 51 Vt. 131.

The opinion of the court was delivered by

ROYCE, Ch. J.   When the accident for which he claims to recover happpened to the plaintiff, he was travelling upon a public highway in the town of Pownal.   When the defendant constructed its railroad in said town, in 1857, it occupied for its road-bed what had been a public highway for more than sixty years, and it was thereby crowded easterly ; and the highway that was thus crowded easterly was the one upon which the plaintiff was travelling at the time of his injury.   There was no evidence that said highway had ever been laid out, but it did appear that it had been used as a public highway since 1857.   The defendant company became the owner of the land contiguous to this highway in 1876, and while occupying it the plaintiff's evidence tended to show that it placed the obstructions upon and so near to it that it was rendered unsafe, and that such obstructions were the proximate cause of the injury he sustained.

The defendant in the court below requested the court to charge that to entitle the plaintiff to recover he must prove that the obstructions complained of were within the surveyed limits of the highway ; that where land has been dedicated for a highway the right of the travelling public to use it for travel is confined to the actual track made by such travelling public, and no margin exists. While that may be true as defining and limiting the right of user, and that as between the adjoining land owners and a traveller no margin exists that the traveller has the right to enter upon or use, it does not follow that such land owners have the right to so use such margins as to endanger the safety of a traveller while he is travelling in the track which the public have the right to travel upon.

The court complied with the request as far as the defendant was entitled to have it complied with, and in its charge upon the subject of the request to which exception was taken, we find no error. The court further charged that to entitle the plaintiff to recover it must be found that the obstructions complained of were upon the highway that was used by the public at that time, and the jury must have so found.   It is claimed in argument that there was no evidence to support such a finding ;   that question should

have been presented in the County Court and before judgment on the verdict.    This court cannot assume that there was no such evidence.

In the cross-examination of one of the selectmen of Pownal, who was a witness called by the plaintiff, he testified that he, with another of the selectmen, by request of one Robinson, who was the wood agent of the defendant, went to see the plaintiff and ascertain what he would settle the claim that is in question in this suit for, and obtained his terms and reported them to Robinson. Robinson's agency and connection with the subject-matter in controversy were thus brought into the case by the defendant.   Robinson was then called as a witness by the defendant, and denied having any such conversation as the selectman had testified to, and said he had no authority to request anyone to go and see the plaintiff; and, on cross-examination, that he did not assume any such authority.   The plaintiff was then allowed, against the objection and exception of the defendant, to show that at said interview Robinson gave them to understand that he represented the defendant.    What transpired at that interview was only material as tending to show an acknowledgment of liability, and to be prejudicial to the defendant it should have been shown that Robinson had authority to act for the defendant.    No such authority could be presumed from the fact that he was the defendant's wood agent, and no other authority or agency seems to have been shown.   The presumption is that the court gave the jury proper directions as to the use to be made of the evidence concerning what had transpired at that interview, as they might have found it to have been, and with such instructions it is not easy to see how the defendant could have been prejudiced if they did not find it as the plaintiff's evidence tended to show.

There was a question of veracity between the plaintiff's witnesses and Robinson.   Robinson denied having made any such proposition as the plaintiff's witnesses had testified to, and as confirmatory of his denial, denied having authority to make it, or that he assumed to have authority. . It would be more probable that he did make the proposition if he assumed that he had the

right to make it than it would be if he made no such assumption, and as affecting the veracity of the witnesses who had testified concerning it the testimony was admissible.

The judgment is affirmed.