STATE *v.* EUGENE SARGOOD and JOHN DOYLE.

May Term, 1904.

Present:  ROWELL, C. J., TYLER, MUNSON, START, STAFFORD, and HASELTON, JJ.

Opinion filed September 15, 1904.

*Criminal Law—Poisoning Animals—Principal and Accessory—Joint Trial—Evidence — Motive — Other Crimes — Relevancy — Witnesses — Competency — Wife of Co-Respondent—Request to Charge—Exceptions—Scope.*

The fact that the respondent has committed a crime other than the one charged is usually deemed to be irrelevant, but it is relevant when it tends to prove the existence of a motive, plan, or purpose which would naturally prompt the respondent to commit the crime charged, though it does not appear that, when the crime charged was committed, the purpose to commit the other was already formed.

When, in the prosecution of two persons for poisoning certain colts, the evidence of the State tends to show that the respondent who did the poisoning acted as the mere tool of the other, who instigated the poisoning for the purpose of paying a grudge against the owner, and also to enable him to charge the poisoning against a certain woman whom he desired to be rid of because she baffled his business plans, evidence that shortly after the colts were poisoned he placed poison where it would be likely to be taken by this woman or her husband, and either she be poisoned or charged with poisoning her husband, is admissible as tending to show that said respondent was actuated by a motive, or had a plan, which would naturally prompt him to commit the crime charged.

In a joint prosecution of two persons for poisoning certain colts, when the State claims that the poisoning was instigated by one respondent in order to pay a grudge against the owner, and its evidence tends to show that, before the poisoning, and in October 1902, when that respondent was requested not to sell the owner any more liquor, he replied, with an oath, that he would get even with the owner for going back on him; evidence that more than once in the fall of 1902, said respondent furnished the owner liquor is admissible, it being conceded that he had no authority to sell.

When, in the joint prosecution of two persons for poisoning certain colts, the State claims that the respondent who did the poisoning acted as the mere tool of the other, evidence that the former in the month following that in which the colts were poisoned, stated to one to whom he offered some liquor that he got it from the other respondent who did not dare to refuse him anything, is admissible against the respondent who is claimed to have said so.

When, in the joint prosecution of two persons for poisoning certain colts, the evidence tends to show a conspiracy between them, and both are convicted, if the jury is properly instructed touching their joint conviction, errors in instructions with reference to their separate convictions are harmless.

When, in the joint prosecution of two persons for poisoning certain colts, the evidence of the State tended to show that the respondent who did the poisoning acted as the mere tool of the other, and the State based its case on that theory, and the whole charge of the court touching a joint conviction proceeded on that theory, which implies the necessity of a common understanding, and no other theory of a joint conviction was presented by the charge, it was not error to refuse to expressly charge that both respondents

could not be convicted unless there was a concert of action or a common understanding.

A general exception to the charge on a specified subject is bad, unless the charge on that subject is wholly unsound.

When the court charges fully and correctly with reference to the necessity of finding that respondent's admission to a detective must have been made understandingly, before it can be used as evidence against him, it is not error to refuse to charge that the respondent cannot be convicted on such admission, if he was intoxicated at the time, and the intoxication was procured by the detective for the purpose of getting the admission.

Where two defendants are jointly indicted and tried for the same offence, the wife of either is incompetent to testify in their favor.

INFORMATION for poisoning colts. Plea, not guilty. Trial by jury at the September Term, 1903, Bennington County, *Watson,* J., presiding. Verdict, guilty; and judgment thereon. The respondents excepted. The opinion fully states the case.

*Batchelder & Bates* and *D. A. Guiltinan* for the respondents.

The evidence that Sargood had furnished intoxicating liquor to Blair was inadmissible, as was also the evidence that, after the colts were poisoned, Sargood attempted to poison Hicks and his wife. These were crimes entirely disconnected from the crime charged, and the evidence tended only to prejudice the jury against Sargood. *State* v. *Smalley,* 50 Vt. 736; *State* v. *Kelley,* 65 Vt. 531; *State* v. *Valwell,* 66 Vt. 558; *People* v. *Gibbs,* 93 N. Y. 470; *Coleman* v. *The People,* 55 N. Y. 81; *People* v. *Corbin,* 56 N. Y. 363; *People* v. *Sharp,* 107 N. Y. 427; *People* v. *O'Sullivan,* 104 N. Y. 481; *Com.* v. *Robinson,* 146 Mass. 202; *People* v. *Foley,* 64 Mich. 148; *State* v. *Bridgman,* 49 Vt. 202; *State* v. *Kelley,* 65 Vt. 531; *State* v. *Totten,* 72 Vt. 73; *State* v. *Hopkins,* 50 Vt. 316;

*Reed* v. *Spaulding*, 42 N. H. 118; *Brock* v. *State*, 26 Ala. 104; *State* v. *Freeman*, 4 Jones (N. C.) 105.

*J. J. Shakshober*, State's Attorney, *O. M. Barber* and *F. C. Archibald* for the State.

The evidence tending to show that Sargood attempted to poison Hicks and his wife, was admissible. It comes within the exception to the general rule, viz.: "The prosecutor may show motive, purpose, preparation or concealment, though it involves the proof of a distinct crime." Wills Circumstantial Ev. 61; *State* v. *Kelley*, 65 Vt. 531; *State* v. *Eastwood*, 73 Vt. 205; *Strong* v. *State*, 44 Am. Rep. 293; *People* v. *Ebanks*, 40 L. R. A. 278; *State* v. *Wentworth & Stone*, 37 N. H. 196; *Pierson* v. *People*, 79 N. Y. 424.

The evidence that Sargood had, without authority, sold Blair intoxicating liquor was admissible, in connection with the evidence that Sargood later had threatened to get even with Blair for going back on him. The evidence tended to show a motive for poisoning the colts. *State* v. *Chase*, 68 Vt. 405; *State* v. *Ward*, 61 Vt. 153; Beers' Stevens' Digest of Ev. Art. 7, p. 20; *State* v. *Dearborn*, 59 N. H. 348; *State* v. *Palmer*, 65 N. H. 216; *Murphy* v. *People*, 63 N. Y. 590; *Pierson* v. *People*, 79 N. Y. 424; *Com.* v. *Merriam*, 14 Pick. 518; *Com.* v. *Choate*, 105 Mass. 451.

When circumstantial evidence is relied upon for conviction, any fact which bears upon the guilt or innocence of the respondent, immediate or remote, and occurring at any time, is proper for the consideration of the jury. *State* v. *Chase*, 68 Vt. 405; *State* v. *Burpee*, 65 Vt. 1; *State* v. *Marsh & Buzzell*, 70 Vt. 288; *State* v. *Noakes*, 70 Vt. 247; *Holmes* v *Goldsmith & Co.*, 147 U. S. 150; *Thiede* v. *Utah*, 159 U. S. 510; *Fitzpatrick* v. *U. S.*, 178 U. S. 304.

STAFFORD, J. The respondents were charged with having killed with poison two colts belonging to a neighbor. They were tried together and convicted and the case is here upon exceptions taken during the course of the trial.

Upon the part of the State a story was developed substantially as follows: In the small village of East Arlington lived Sanford Hicks and his wife, occupying a house upon the street. On the same premises was a barn in which Blair, who lived near by, kept the colts under an arrangement with Hicks. In the same village lived Sargood, one of the respondents. The other respondent, Doyle, was in and about the village more or less. Sargood was ambitious to get the Hicks place and turn it into a hotel where he might sell liquors under a license to be procured from the authorities. He had succeeded in his negotiations so far as Hicks himself was concerned, but had found his plan blocked by Mrs. Hicks, whose consent was necessary and could not be obtained. Sargood had been selling liquor to Blair in violation of law, and believed, as he expressed it, that "Blair had gone back on him," and so he was bent on "getting even with Blair." Doyle had no apparent interest in Sargood's plan in respect to the Hicks house, and no ill will against Blair. He was friendly to Sargood and not unwilling to please him. On the third day of April, in the afternoon, Blair discovered that his colts were sick; the next day they were worse and were found to have been poisoned with paris green, some of which remained in their feed boxes. They died the morning of the next day, which was Sunday, the fifth. Detectives were employed and some time later procured an admission from Doyle, while he was in liquor, that the poisoning had been done by him at the instigation of Sargood. Very soon after the colts were poisoned Sargood attempted to direct suspicion towards Mrs.

Hicks and advised Blair to have her arrested. In this he did not succeed. Sunday, the fifth, he went to the Hicks house and was in the kitchen where a considerable number of unwashed dishes had accumulated upon the table. Into some of the teacups, the circumstances tended to show, he put poison so mixed as to resemble tea, hoping that Mrs. Hicks would be poisoned and so removed from his way, or else that her husband would be poisoned and the crime laid at her door and the same result accomplished. Hicks did take some of the poison into his mouth but detected it before it was swallowed. No witness testified to seeing the poison placed in the feed boxes or in the teacups. The theory advanced by the State was that Sargood was the moving spirit throughout and that Doyle was his tool; that Sargood was moved by the desire to get rid of Mrs. Hicks's opposition and caused the colts to be poisoned with the hope and expectation that Mrs. Hicks would be held responsible and, failing in this, attempted the poisoning of the Hickses themselves; that incidentally he was gratifying his grudge against Blair, but that his principal motive was the ulterior one just stated.

One of the chief exceptions is that which was taken to the admission of any and all evidence touching the attempted poisoning of the Hickses. This evidence, it is urged, was irrelevant as tending to establish a distinct crime unconnected with the one charged. On the other hand it is claimed by the State to be relevant as tending to establish a motive for the crime charged and to identify Sargood as the criminal. It is all a question of relevancy. That the accused has committed another crime is usually irrelevant. It is relevant only when it tends to prove that he committed the crime charged. It does tend to prove that he committed the crime charged when it tends to prove that he was actuated by a motive, or enter-

tained a plan or purpose, which would naturally prompt him to commit it. Here the second crime followed close upon the heels of the first. If it was committed by Sargood it tended to establish and make clear the motive he had for poisoning the colts, which, without it, might seem doubtful and obscure, and so tended to identify the culprit. We do not understand that it is necessary that when the first crime was committed the purpose to commit the second should be already formed and entertained. It is enough if the commission of the second is so related to the first as to shed a light upon it which may enable the trier to see how, why, or by whom it was committed. We think that the evidence was relevant and admissible. The authorities upon the subject may be found collected and reviewed in an extended note to *People* v. *Molineux,* 62 L. R. A. 193; also in 12 Cyc. 405-411.

Webb, the father-in-law of Blair, had testified to requesting Sargood, in October, 1902, not to sell Blair any more liquor, and to Sargood's replying with an oath that he would get even with Blair for having gone back on him. Afterwards Blair was allowed to testify that more than once in the fall of 1902 Sargood had furnished him liquor; it being conceded that Sargood had no authority to sell. This testimony of Blair's came in against exception, and under that exception it is now urged that it did not appear that the furnishing was before the conversation testified to by Webb. The exceptions as amended, however, make it clear, especially in view of the argument which took place in the court below, that the offer was to show that Sargood *"had been* letting Blair have intoxicating liquor," that is to say, had been letting him have it before the time of the Webb-Sargood conversation. That was the offer upon which the court passed. The evidence as given was

not excepted to for failing to come within the offer, and although it was not in terms limited to the time preceding the conversation, the jury might find from it that the occasions of furnishing really were previous.

In the July following the April in which the colts were poisoned, Doyle had offered Blair a drink of whiskey out of a bottle. Blair had asked him where he got it and he had replied, "Of Sargood." Blair then expressed his surprise that he could get it of him; whereupon Doyle said, "I can get what I want of Sargood; he dare not refuse me anything." Sargood had no authority to sell whiskey at that time. This evidence was admitted as against Doyle alone over the exception of both respondents. We think it was admissible as having some tendency to show that Doyle was the one who did the poisoning for Sargood, if the jury should find, as they might upon other testimony, that Sargood was at the bottom of the business. Evidence admissible against one only of the respondents was in this and other instances properly received, its use by the jury being duly guarded and restricted by the court. *State* v. *Cram,* 67 Vt. 650, 32 Atl. 502.

Among the dishes on the table in the Hicks kitchen was a tumbler containing poison, and the evidence tended to show that the tumbler, which was of an unusual pattern, was like others which Sargood had in his house. Sargood's wife was offered as a witness by both respondents to show that there had been no such tumbler in her husband's house. She was excluded as incompetent. The evidence of the State did not tend to connect Doyle with the attempted poisoning of the Hickses; still, any evidence which tended to show that Sargood had no hand in poisoning the colts would have helped Doyle, because the theory was that Doyle was only a tool, having no personal hostility to Blair; so we cannot agree with

the State's counsel that this evidence, if coming from a competent witness, would not be evidence in favor of Doyle. But the ordinary common-law rule, which prevails with us, prevents a respondent from introducing as a witness the wife of a co-respondent just as it prevents the introducing of his own. Stephen's Digest of Ev. Art. 108. If an exception exists where the respondents sever in their pleas and stand upon independent grounds and the offered evidence relates solely to the defence of the respondent who is not the spouse of the offered witness, such was not the situation here. The respondents were indicted and tried jointly and the offered evidence would have been even more pertinent and helpful to Sargood than to Doyle. See note to *State* v. *Boyd*, 27 Am. Dec. at p. 379; *State* v. *Bridgman*, 49 Vt. 202.

For similar reasons the wife of Doyle was properly excluded.

The offer to show that on a certain occasion Mrs. Hicks drank and gave Doyle to drink of whiskey was properly excluded as immaterial. We do not state the point more fully because it is a mere question of connection and furnishes no illustration of the law that could be useful hereafter. The same reason leads us to dispose of another exception in the same way, namely, that which was taken to the exclusion of the offer to show that Mrs. Hicks before her marriage to Mr. Hicks had sometime complained of him to a justice of the peace.

The exception to the action of the Court in permitting the State, upon re-examination of O'Brien, to clear up a point in his testimony which respondents' counsel had thrown into momentary confusion upon cross-examination, need not claim our attention further than to remark that the question presented by the respondents' brief is not the question presented by the bill of exceptions.

The testimony referred to in the bill tended to show a conspiracy and understanding between the respondents, and that Sargood was an accessory, and so sustained the charge of the Court in that respect. The Court charged that either respondent might be convicted alone or that both might be convicted. A request was made to charge that both could not be convicted unless there was concert of action or a common understanding, and an exception was taken to the claimed omission to comply. An exception was also taken to the charge that either might be convicted without the other, the ground of the exception being that the State had put its case upon the theory that Doyle did the poisoning, although he did it for Sargood, so that Sargood could not be guilty unless Doyle was. So far as the latter exception is concerned it may be disposed of by saying that the verdict found both guilty and if they were found guilty upon proper instructions touching a joint conviction the charge upon the subject of separate convictions, even if it was erroneous, could not have been harmful. It thus becomes necessary to inquire whether the charge was correct and sufficient touching a joint conviction.

The position of the respondents now is that the jury was told that there was evidence upon which it might convict Doyle alone and evidence upon which it might convict Sargood alone, and that it was left at liberty to convict the two jointly upon this evidence which tended to show each guilty independently of the other. The answer of the State is that the charge was a virtual compliance with the request. The request was not expressly complied with. In no part of the charge was the jury explicitly told that it could not convict both respondents in the absence of proof of a common understanding. The only part of the charge that deals with the subject of a joint conviction proceeds upon the theory, already

referred to more than once, that Doyle was the actual agent in the poisoning and that Sargood aided, advised or encouraged him therein. The charge upon this subject implies, throughout, the necessity of a common understanding, and no fault is found with it in this respect. No other theory of a joint conviction was presented by the charge, and it is repeatedly stated in the respondents' brief that this was the theory upon which the State rested its case. How, then, could the jury have understood that it was at liberty to convict both respondents upon the theory that each, acting independently of the other, without any common understanding, and one of them without any motive of his own, had gone about to poison the colts, and had actually poisoned them to death? That would be a story so strange and improbable as certainly to require very clear demonstration in proof and we should not be likely to find the recital of the trial entirely silent in regard to it. We cannot set aside the verdict upon the conjecture that it may have had such a basis under this charge. The jury must have understood that the only basis for a joint verdict was the one which is singly, fully and accurately stated,—the ground upon which the State had sought to put itself throughout the trial.

The respondents excepted to what the court said in its charge "about the testimony of the respondents before the grand jury, and its effect if they testified differently there from what they did on this trial." What the court said upon this subject is contained in two separate paragraphs and in substance was that if either of them testified differently there from what he did before the petit jury, it impeached him as a witness, affected his credit, to some extent, (how much, the jury was to say) and also constituted a piece of evidence in the nature of an admission that the fact was as then stated

instead of being as stated on trial; but that such contradiction affected only the one as to whom it was proved. The exception did not point out the fault which the respondents found with the statement of the rule but simply excepted to what the court said upon that subject as a whole. It is now claimed that there was an unsoundness in that it declared that the contradiction impeached instead of declaring that it tended to impeach; it being for the jury in all cases to say whether the contradiction does really affect the credit of the witness. If this was the point of the exception it should have been made specific at the time, when the learned judge might have reconsidered the expression. As it was, we have no reason to suppose that his attention was drawn to it. The party having veiled his objection under a general exception must be judged by the rule which pronounces the exception bad if the proposition excepted to deals with several matters, unless it is unsound as to all.

The court was requested to charge that Doyle could not be convicted merely upon the evidence of his own admission made to the detective, if Doyle was intoxicated and the intoxication was procured by the detective for the purpose of getting the admission. The request was properly refused, the court charging fully and correctly touching the necessity of the admission being understandingly made, which was the only legal importance attending the question of intoxication.

*Judgment that there is no error in the proceedings of the County Court, and that the respondents take nothing by their exceptions. Let a mittimus issue and execution be done.*

*Start, J.,* dissents.