THOMAS USHER *v.* W. S. SEVERANCE.

Special Term, Brattleboro, February, 1913.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed May 8, 1913.

*Review—Presumptions in Support of Judgment—Arrest Without a Warrant—Exceptions—Sufficiency—Assault and Battery—Civil Action—Instructions—Presumption of Innocence—Evidence—Admissibility—Objections—Sufficiency—Remarks of Counsel—Sufficiency of Objection Thereto.*

On review every presumption is to be made in favor of the judgment below which is not positively inconsistent with the record, and so in an action against a police officer for assault and battery, growing out of the arrest of a boy, without a warrant, for stealing bicycles, where the record did not negative the introduction of evidence showing the value of the bicycles, this Court cannot assume, against the judgment below, that no such evidence was introduced, and treat their value to be such as to make the offence petit larceny, for which the officer could not arrest without a warrant.

A police officer has the right to arrest without a warrant a person whom he reasonably suspects to have committed a felony.

Where plaintiff submitted seven requested instructions, all of which the court refused, an exception "to the refusal of the court to so charge" was too general to reserve any question.

A general exception to a designated instruction cannot avail, if any part of the instruction is sound.

In an action against a police officer for assault and battery growing out of the arrest of a boy for larceny and the subsequent questioning of him by defendant, an instruction that it was the right of defendant with his associate officers to question the boy concerning the whereabouts of the property supposed to have been stolen and as to his guilt or innocence, and that he had the right to answer such questions if he chose, and that thereby defendant would incur no liability, was sound.

In a civil action for assault and battery, the law presumes that defendant did not commit the assault, and that presumption is in the nature of evidence in favor of defendant, and exists until overcome by evidence in favor of the plaintiff.

In an action against a police officer for assault and battery growing out of the arrest of a boy for larceny, where defendant's evidence tended to show that while defendant and other police officers were questioning the boy in the police station plaintiff, and other relatives of the boy, created a disturbance by boisterous, profane, and vulgar language, and that, because of this disturbance and plaintiff's refusal to leave, defendant gently expelled plaintiff from the station house, which was the assault and battery complained of, plaintiff should have been permitted in rebuttal to contradict the testimony of defendant's witness that the boy's aunt called the officers designated vile and abusive names, since plaintiff had the right to show in rebuttal that the disturbance relied on as a justification for the assault did not take place in whole or in part.

An objection to the admission of evidence must state the ground thereof, unless it appears on the face of the question or offer that the evidence cannot be material or relevant in any state of the case.

In an action against a police officer for assault and battery, where plaintiff's evidence tended to show that he was thrown out of the police station by defendant without any provocation on his part, except that he advised his nephew, who had been arrested for larceny, not to answer the questions the officers were asking, plaintiff's offered evidence that the boy was in fear of the officers when he answered the questions, and supposed he was obliged to answer them, and that because of such fear his answers were not voluntary, was properly excluded.

To reserve an available exception to the overruling of an objection to remarks of counsel in argument to the jury, the objection must specify the language deemed improper, and specifically state the ground of the objection, so that the court may know upon what it is asked to rule.

TRESPASS for assault and battery. Pleas, the general issue and three special pleas in justification. Trial by jury at the

April Term, 1912, Windham County, *Fish*, J., presiding. Verdict and judgment for the defendant. The plaintiff excepted.

At the time in question the plaintiff was a resident of Bellows Falls, an incorporated village in the town of Rockingham, and the defendant was the chief of police in said village. It appeared that the village owned a police station house of which the defendant, as chief of police, had a key, and according to his testimony he had the care and custody thereof. It also appeared that on the evening of September 21, 1910, the defendant, with the assistance of other officers, arrested one Morris Meany, a boy of the age of fourteen years, charging him with the larceny of bicycles, and took him to the police station, where the defendant and another officer, in the presence of five other police officers of the village began to question the boy about his connection with the taking of the bicycles, with the view of showing him guilty of stealing them, and of finding out where they were; that while the boy was thus being questioned, Thomas Meany, the boy's father, Mrs. Thomas Meany, his stepmother, the plaintiff, the boy's uncle, and one or two others of the boy's relatives, came into the station house. It also appeared that the boy had, for several years prior to the day of his arrest, lived with his uncle, the plaintiff.

The plaintiff's evidence tended to show that Thomas Meany, as soon as he arrived at the station house, protested against the officers' further questioning his son, and that the officers told him to "shut up" or they would put him out of the station house. It appeared that the plaintiff, as soon as he arrived there, told the boy not to answer any more questions which the officers might ask him, and later the defendant ordered the plaintiff out of the station house. The plaintiff's evidence tended to show that he told the officers he was the boy's uncle, and had come there for the purpose of aiding and securing the release of the boy, and to give him any other necessary assistance; that the defendant, without provocation upon the part of the plaintiff other than to advise the boy not to answer the questions the officers were asking, threw the plaintiff out of the station house and caused the injury for which this action was brought; and that the plaintiff objected to the officers' questioning the boy in regard to the matter for which they had arrested him, until the boy had obtained the services of a lawyer.

The defendant's evidence tended to show that after the plaintiff had told the boy not to answer any questions put to him by the officers, the latter continued to ask the boy questions, that thereupon the plaintiff and other relatives of the boy then in the station house created a disturbance by boisterous, profane, and vulgar language, and called the defendant and other officers indecent names, and that the defendant told the plaintiff and other relatives of the boy that they must cease their disturbance or leave the station house; that the plaintiff, together with the said other relatives, continued the disturbance and refused to leave the station house, whereupon the defendant lightly placed his hand upon the plaintiff, led him to the door of the station house, opened the door, and the plaintiff walked out, offering no resistance to going out; that the plaintiff received the injury complained of by not properly stepping from the station house door to the sidewalk; that the threshold of the door was six inches higher than the sidewalk and that the plaintiff was not acquainted with the police station or its surroundings; that the alleged injury occurred between nine and ten o'clock at night, and that the sidewalk and entrance to the station house was poorly lighted, all of which the plaintiff's evidence denied, except that there was no controversy as to the threshold of the station door being six inches higher than the sidewalk, and that the plaintiff was unacquainted with the interior of the police station and its surroundings, and had never been in the station before.

No warrant or other legal paper authorizing the defendant or any officer to arrest the boy, was offered in evidence; and the exceptions do not show what the value of the bicycles supposed to have been stolen was, nor whether any evidence was introduced showing their value.

The defendant's evidence further tended to show that the boy was advised that he was not obliged to answer any question, but could do so if he wished, and that the boy did answer all questions propounded.

There was no evidence tending to show that the boy was caught in the act of stealing bicycles or of any other violation of the law, nor was there any evidence tending to show that the officer arresting him had a warrant for his arrest.

Defendant's evidence tended to show that Morris Meany did not object to answering the questions and that he answered them of his own free will. In rebuttal the plaintiff offered to show by the boy that when he was arrested he was frightened, in fear of the officers, and supposed he must answer every question asked him; that he did not answer the questions voluntarily or because he wished to answer them, but because of his fear of the officers; that the reason he did not answer his father and the plaintiff when they questioned him was because of his fear of the officers, and that all the answers by him on that occasion were made involuntarily, and because of his fear of the officers and his belief that he was obliged to answer. This offer was excluded, and exception saved.

The court charged the jury in part as follows: (1). "It was the right of the defendant as a police officer with his assistant officers, to question the Meany boy concerning the whereabouts of the bicycles supposed to have been stolen, and to question him as to his guilt or innocence in the premises, and it was the right of the Meany boy to answer such questions if he chose, and the defendant would incur no liability in such case. It was the duty of the defendant in the position which he occupied, and his assistant officers, to question and examine the Meany boy in relation to the larceny of the bicycles and as to where the bicycles were. It was a proper matter for their consideration, for their examination, their inquiry, to ascertain whether crimes had been committed within the limits of their jurisdiction and who committed the crime. It was the right and privilege of the defendant and his associate officers to continue questioning the Meany boy as to his guilt or innocence and the whereabouts of the bicycles, notwithstanding the plaintiff and the others, as shown by the evidence, protested against such examination. The officers could go ahead, they could ask questions and they could take answers. The question might ultimately come whether these answers could be used against the boy in evidence, but that is not for you to consider; that is not any part of your duties here; there is no constitutional question that is involved so far as you are concerned, if sometime in a court of competent jurisdiction the question were to be raised as to whether the answers then obtained were proper matters of evidence against the boy, there the constitutional

question might be raised and determined, but that is not for you.'' The plaintiff objected to the charge as thus given and was allowed an exception.

*Thomas O'Brien, Herbert G. Barber* and *Frank E. Barber* for the defendant.

*Chase & Chase* and *W. R. Daley* for the plaintiff.

WATSON, J. The plaintiff contends that since the record does not show that any evidence was introduced touching the value of the bicycles stolen, the presumption is, that their value was only such as to make the offence petit larceny, and that therefore the officer had no authority in law to arrest the boy without a warrant therefor. However, the record does not negative the introduction of such evidence, and this Court cannot assume that none was introduced. *Brownell* v. *Troy & Boston R. Co.,* 55 Vt. 218; *Armstrong* v. *Noble,* 55 Vt. 428. Every presumption is to be made in favor of the judgment below which is not positively inconsistent with the record. *Campbell* v. *Patterson,* 7 Vt. 86; *Prior* v. *Wilbur,* 63 Vt. 407, 22 Atl. 74.

It cannot be said, then, on the record, that the bicycles stolen were not of sufficient value to make the stealing of them a felony; and if it be a felony, the defendant as chief of police, if he had reasonable cause to suspect that the felony had been committed by the boy, had a right to arrest him without a warrant therefor. *State* v. *Shaw,* 73 Vt. 149, 50 Atl. 863.

The record shows that the plaintiff submitted seven different requests to charge; that the court refused to charge as thus requested; ''and to the refusal of the court to so charge the jury, the plaintiff was allowed an exception.'' That an exception like this to such a refusal to charge is too general to be available, has been held so many times that a citation of authorities is unnecessary.

The court charged the jury as shown in the statement of the case, in paragraph marked (1), and ''The plaintiff objected to the charge as thus given, and was allowed an exception.'' This exception is sufficient only in case the entire portion of the charge covered by it was erroneous. And that it was not, we need to notice only the first sentence in the paragraph: ''It

was the right of the defendant as a police officer with his assistant officers, to question the Meany boy concerning the whereabouts of the bicycles supposed to have been stolen, and to question him as to his guilt or innocence in the premises, and it was the right of the Meany boy to answer such questions if he chose, and the defendant would incur no liability in such case." Since this part of the charge correctly stated the law applicable to the case, the whole of the charge within the exception taken was not unsound, and the exception avails nothing. *State* v. *Sargood,* 77 Vt. 80, 58 Atl. 971; *Needham* v. *Boston & Maine Railroad,* 82 Vt. 518, 74 Atl. 226.

An exception was saved to the further charge, "That the plaintiff's declaration in effect charges a crime upon the defendant—it charges assault and battery, which is a crime. The law raises in behalf of the defendant a presumption of innocence, and this presumption must be treated by you as a piece of evidence in favor of the defendant throughout the case and continues until it is overcome by evidence of the plaintiff." Exactly the same question was raised by an exception to the court's refusal to charge in accordance with a request setting forth in substance the same principle of law, in *McKinstry* v. *Collins,* 76 Vt. 221, 56 Atl. 985. The holding there that the request was sound in law and should have been complied with, is full authority here for the charge given. See also *In re Cowdry's Will,* 77 Vt. 359, 60 Atl. 141, 3 Ann. Cas. 70.

Mrs. Usher, the wife of the plaintiff, was used by him as a witness in the opening case. She testified to being in the police station on the evening in question, but that she was not there until after her husband left. She was not asked by the plaintiff, and he introduced no evidence, as to her calling Mr. Phelps and some of the other officers names on that occasion. The plaintiff introduced evidence of what was said at the police station by the officers and the plaintiff and the father of the boy, but did not include what was said by other relatives of the boy. Thomas Bagley, a witness called by the defendant, was allowed to testify, subject to exception, that during the time which preceded the leaving of the station by the plaintiff, "Mrs. Usher called Mr. Phelps a God damned bastard and that we were all a damned pack of rogues." In rebuttal, the plaintiff offered to show by Mrs. Usher and by other wit-

34

nesses that she did not make those remarks.    The offer was excluded and exception saved.

The defendant's evidence tended to show that the plaintiff and other relatives of the Meany boy, including Mrs. Usher, in the station house, created a disturbance by boisterous, profane, and vulgar language, and called the defendant and other officers indecent names, and that the defendant directed them to cease their disturbance or leave the station house; that the plaintiff and such other relatives continued the disturbance aforesaid and refused to leave, whereupon the defendant lightly placed his hand upon the plaintiff, led him to the door, and the plaintiff walked out, etc.    Such being the tendency of the defendant's evidence and the reason given for expelling the plaintiff from the station house, it was clearly within the right of the plaintiff to show in rebuttal that such disturbance did not take place in whole or in part.    The evidence offered was along this line, and to exclude it was harmful error.

The record does not show the ground of the plaintiff's objections and exceptions to the testimony of defendant's witness Phelps, that on the day in question, a boy named McDonald had been arrested, charged with stealing money, and that he was detained in connection with the larceny of bicycles; and that the Meany boy was held by the officers at the station house and examined in regard to the offences committed by the McDonald boy.    It cannot be said that this evidence was immaterial and irrelevant in any view of the case, hence these exceptions are without force.    *Herrick* v. *Holland,* 83 Vt. 502, 77 Atl. 6; *Townshend* v. *Townshend,* 84 Vt. 315, 79 Atl. 388; *Spencer* v. *Potter's Est.,* 85 Vt. 1, 80 Atl. 821.

The evidence offered by plaintiff in rebuttal to show that the Meany boy was in fear of the officers when he answered the questions asked him by them, supposed he was obliged to answer them, etc., and that because of such fear his answers were not voluntary, was properly excluded.    It had no bearing on the rights of the plaintiff in this case.

In arguing the case before the jury, defendant's attorney made a certain statement touching the evidence.    The record states, "The plaintiff objected to said argument of defendant's counsel and was allowed an exception."    No ground of the objection was stated, and hence the ruling, if any in fact made,

does not appear. To be available, such objection must point out the language deemed improper, and state specifically the ground. of the objection, so the court may know upon what it is called upon to rule. Thomp. Trials, sec. 962, par. (2); *Dimon* v. *N. Y. C. & H. R. R. R. Co.*, 173 N. Y. 356, 635, 66 N. E. 1, 628.

*Judgment reversed and cause remanded.*