# State of Vermont v. William G. Bogart, III

[312 A.2d 733]

No. 15-73

Present: **Barney, Smith, Keyser and Daley, JJ., and Hill, C. Supr. J.**

Opinion Filed December 4, 1973

*Robert I. Tepper,* State's Attorney, *Stephen Alan Dardeck,* Assistant State's Attorney, and *Stephen L. Klein,* Assistant State's Attorney, for the State.

*Robert Edward West,* Defender General, and *George E. Rice, Jr.,* Deputy Defender General, for Defendant.

**Smith, J.** The defendant, William G. Bogart, III, was charged with wilfully suffering an inmate of the Rutland Community Correctional Center, one Arthur L. Massei, to go at large,

without lawful authority, on March 12, 1972. Trial was commenced in the Rutland County Court on September 27, 1972, and terminated, after various hearings, on October 4, 1972, with a jury verdict of guilty. On October 11, 1972, defendant filed a motion for judgment not on the verdict and an alternative motion to set aside verdict and order a new trial. The Rutland County Court, on November 17, 1972, issued findings, opinion, and an order with reference to the motions filed by the defendant. Such motions were denied. The defendant then duly took his appeal to this Court. It is the defendant's contention that the conviction should be set aside.

The defendant's first briefed contention is that he did not receive a fair trial because of the allowance by the trial court of testimony referring to the commission of unrelated offenses during the trial.

The principal witness called by the State against the defendant was one Arthur Massei, who was a federal prisoner, confined in the Correctional Center on February 29, 1972. It was the testimony of Massei that within an hour of his arrival at the Correctional Center he was given a drug by the defendant to relieve the pain caused by an infected finger, as well as an envelope containing a hypodermic needle and drugs which could be injected into his blood by use of the needle. Massei also testified that he was informed by the defendant (1) that for $25.00 he could see his wife in a room in the Center, (2) that on the payment of $100.00 to the defendant he could leave the institution for three hours, and (3) that defendant gave him a business card with the address of a hairdresser whom the defendant recommended to Massei's wife.

It was Massei's further testimony that during the next twelve day period he paid the defendant $260.00 from a total of $440.00 which was given to him by his wife at the Center. In return for this money, Massei testified, he received drugs from the defendant almost daily, a second hypodermic needle for use by another inmate, and was permitted to leave the Correctional Center for an agreed upon length of time on March 8th and March 12th to see his wife.

Further evidence given by Massei was that on both occasions when he left the Correctional Center he did so through a fire

window on the driveway side of the building which had been opened to allow him to escape. On both occasions his testimony was that the defendant showed him a gold key and indicated that everything was prepared for the escape. Each time Massei left the Correctional Center he went to the Bardwell Hotel where his wife had taken a room. It was at the Bardwell Hotel on March 12, 1972, that he was apprehended in a room occupied by his wife.

The evidence below, taken in the light most favorable to the State, establishes that on March 12, 1972, the defendant told other correctional officers at the Correctional Center that he feared an escape by Massei, and to maintain a close inspection of the Center. Nevertheless, about 6:30 P.M., the defendant, then senior officer at the Center, left the premises and went to the store to buy various items requested by the inmates.

While at the store he was notified by a fellow officer that Massei and another inmate, Matthews, had escaped. Although the other officers had checked the Center, both inside and out, before the defendant returned to the premises, he ordered another search. Upon the defendant's return from an outside inspection of the premises, he held up a lock which fitted the window through which Massei and Matthews had escaped, and announced that he had found it on the ground near the window. It had been Massei's testimony that when he escaped through the unlocked window he looked for the lock, but it was not on or near the window.

We consider now the claim by the defendant that the lower court was in error allowing testimony referring to the commission of unrelated offenses throughout the trial.

The reference is, of course, to the testimony of Massei to his purchase of drugs and hypodermic needles from the defendant. Defendant took an exception when the first question relative to the purchase of drugs was asked by the State, which exception was sustained. When the subject was again introduced, the defendant objected to such evidence, but such objection was overruled. No objection was made when further evidence on the purchase of drugs by Massei from the defendant was received.

The matter of the introduction of evidence of drugs into the case was not brought forward again until the defendant

filed his alternative motion to set aside verdict and order new trial.

While both the defendant and the State have briefed a number of inferior federal court decisions relative to allowing the introduction of evidence of the commission of other criminal acts not alleged in the information, we believe that our own case of *State* v. *Levine*, 117 Vt. 320, 91 A.2d 678 (1952), fully sets forth the rule which is followed in this jurisdiction. In that case Justice Cleary set forth the standards for this Court to follow on page 327 of his opinion.

It is the general rule that evidence of other acts or offenses is not admissible to prove the commission of the act complained of. *State* v. *Howard*, 108 Vt. 137, 151, 183 A. 497. But such evidence is admissible in a proper case. See *State* v. *Donaluzzi*, 94 Vt. 142, 145, 109 A. 57, and cases there cited. The controlling question is: Is the evidence relevant—does it tend to prove any fact material to the issues in the case? If the evidence is admissible on other general grounds, it is no objection to its admission that it discloses other offenses, even though they are indictable. *State* v. *Donaluzzi, supra*. Testimony is admitted to show motive, intent, knowledge, a plan or purpose, or preparation, leading up to or connecting the respondent with the commission of the offense, although it involves proof of a distinct crime. *State* v. *Kelley*, 65 Vt. 531, 534, 535, 27 A. 203; *State* v. *Eastwood*, 73 Vt. 205, 207, 50 A. 1077; *State* v. *Sargood and Doyle*, 77 Vt. 80, 85, 86, 58 A. 971; *State* v. *Donaluzzi, supra; State* v. *Williams*, 94 Vt. 423, 430, 111 A. 701; *State* v. *Winters*, 102 Vt. 36, 50, 145 A. 413; *State v. Howard*, *supra*.

The defendant asserts that one of the drugs claimed by Massei to have been sold to him by the defendant was a non-narcotic analgesic, darvon. Such argument is immaterial since the defendant is not here charged with a drug selling offense.

The undisputed facts are (1) that the defendant offered for sale to inmates of the Correctional Center, with permission, musical tapes or cassettes, and (2) that the defendant filed a bankruptcy petition soon after he was suspended from his position as correctional officer.

In considering the question presented, we must bear in mind that it was the testimony of Massei that the defendant (1) offered to sell him a hand gun for $100.00; (2) offered, for a consideration, to aid the defendant to escape from the United States into Canada; (3) offered hair dressing services of a man he described as his partner to the feminine relatives of inmates; and (4) sold tapes to inmates.

All of the evidence, when considered together, leads to the inescapable conclusion that the defendant was seeking additional opportunities to supplement the salary from his occupation. The testimony of Massei as to the prices charged by the defendant for these various acts establishes that it was a profit motive that impelled the defendant to commit these and other illegal acts.

As we have seen in *State* v. *Levine, supra,* a well recognized exception to the rule which prevents the introduction of evidence of other criminal acts committed by the accused permits evidence which tends to show his motive to commit the offense charged. 29 Am. Jur. 2d *Evidence* § 325, at 376; *Moore* v. *United States,* 150 U.S. 57, 37 L. Ed. 996 (1893). This Court stated in *State* v. *Marshall,* 77 Vt. 262, 272, 59 A. 916 (1905), "[W]hen several crimes form a part of one entire transaction and have some connection with each other, as a part of the same plan or induced by the same motive, they may be shown to reduce the probability of innocence . . . ."

The evidence of the State was to the effect that the defendant had a scale of prices for which he would render various illegal services for inmates of the Correctional Center including in such scheme or plan a price for allowing them to escape from such institution. The motive which led to the defendant wilfully permitting the escape of Massei was financial gain. The evidence of the other criminal acts was relevant to show such motive on the part of the defendant, and we find no error in such admission.

The defendant also argues that all of the evidence in the case against him [the defendant] was circumstantial. However, we note that the record of the case shows that counsel for the defendant stated that the evidence against his client [the defendant] was only "partly circumstantial." We find in the rec-

ord the direct evidence of Massei that the defendant showed him the key to the window through which the defendant told Massei he could escape. Massei did escape through such window, and it was the defendant who displayed the open lock which he alleged he found outside the window, although there was other evidence that such lock was not on or outside the window during the escape or immediately thereafter. No error is found.

Some thirty-five hours after the jury in this case rendered its verdict of guilty one of the ladies on the jury stated to the lower court that after reading an account of the trial in the newspaper, and discussing the case with her husband, a clergyman, she wished to change her verdict.

The rule in this State since *Robbins* v. *Windover*, 2 Tyler 11, 14 (Vt. 1802), is that the testimony of a juror is not available to impeach a verdict in which he participated. This doctrine has been invoked in a number of cases since *Robbins* v. *Windover, supra.* See *Bellows Falls* v. *State Highway Board*, 123 Vt. 408, 411–12, 190 A.2d 695 (1963).

In the instant case the verdict was received by the Rutland County Court on October 4, 1972. It was not until October 6, 1972, that the juror informed the court that she had changed her mind on her verdict of "Guilty" and gave her reasons why. The jury had been polled at the time of verdict, and each juror announced his or her verdict of "Guilty." Such action by the jury was final and the verdict stands as rendered. 89 C.J.S. *Trial* § 487, at 145; *Friedman* v. *Ralph Brothers, Inc.*, 314 Pa. 247, 171 A. 900, 903 (1934).

*Judgment affirmed.*