### State of Vermont v. David N. McMann

[336 A.2d 190]

No. 139-74

Present: Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.

Opinion Filed April 1, 1975

*Dale O. Gray,* State's Attorney, St. Johnsbury, for Plaintiff.

*Brock & Sidel,* Montpelier, for Defendant.

**Larrow, J.** Respondent was tried by jury in the District Court of Vermont, Unit No. 4, Essex Circuit, and found guilty of a nighttime attempt to break and enter the dwelling house of one Sawyer, in which personal property the subject of larceny was situated, with intent to commit larceny. As ground of error, he here asserts a lack of sufficient evidence to support a finding of larcenous intent, error in denying his motion for directed verdict and for judgment notwithstanding the verdict based upon such lack, and the ineffectiveness of his trial counsel. Trial counsel was, of course, not the attorneys now representing him.

The facts evolved at trial involve many unique aspects, including a pursuit initiated some time after the alleged burglary attempt by the house occupant and his wife, a somewhat bizarre shooting of the respondent's unarmed companion under a claim of self-defense, and the role of a young bull used as a watchdog. But essentially the State proved, largely by testimony of Sawyer and his wife and the admissions of respondent, that on the date in question respondent and another (or possibly two others) came by car over a long private road in the early morning hours to the former U.S. radar base in East Haven, Vermont, then occupied by Sawyer and his wife. While one held off the watchdog bull, another tried three doors, all secured, at the residence. One door was within the building, entered through an open vestibule. No door was opened, although all were vigorously shaken. The visitors were not interrupted, although Sawyer and his wife observed them from within the dwelling. They then went to an adjacent garage and entered it by shoving aside a temporary covering of a broken window. The overhead door of the garage was opened from within, but nothing was taken from the garage. The visitors then left, and after a short interval, Sawyer and his wife, armed with gun and poker, took up the pursuit. The shooting, and subsequent arrest, ensued at a point some two miles distant from the residence, on the private road leading to it.

On trial, respondent admitted being at the scene, but denied any criminal intent. A criminal record, including two robbery convictions, was elicited from him by questioning of his own counsel.

██ Respondent argues that the record below is lacking in evidence required to support a jury finding of the specific intent to commit larceny, an essential element of the offense with which he was charged. Such intent is a matter of state of mind, necessarily proved, in the absence of admission, only by inference from attendant circumstances, *State* v. *Reed,* 127 Vt. 532, 538, 253 A.2d 227 (1969). Respondent argues, we think correctly, that where evidence of such intent is purely circumstantial, as here, it must be so cogent as to exclude every reasonable hypothesis consistent with his innocence. *State* v. *Levy,* 113 Vt. 459, 461, 35 A.2d 853 (1944). The evidence here has no such cogency. At best, it shows that respondent tried three locked doors, but desisted from any further attempts to open them. He then entered another building, in which personal property was located, but took nothing. Then he left, without being subjected to any outside interruption of his alleged efforts. Touching only briefly on these facts in argument, the State quite clearly put its main reliance, for proof of intent, upon the previous convictions of the respondent for robbery. It argued, albeit without objection, that "robbery is stealing, stealing is larceny, that is what he has been charged with." The charge of the court was merely to the effect that prior convictions, involving moral turpitude, affected respondent's credibility as a witness; that intent could be inferred from all the circumstances, making sure that the only reasonable intent to be inferred was that of intent to commit larceny. The instructions did not negate in any manner the State's argument that such intent could be inferred from prior convictions.

It is, of course, true that prior convictions of crimes involving moral turpitude, within a fifteen year period, are admissible in evidence to impeach the credibility of a respondent who takes the stand. 12 V.S.A. § 1608. Admissions of such convictions were elicited by respondent's own counsel when respondent testified, a not unusual trial tactic to soften their effect. Admission without objection,

or by agreement, or at respondent's own initiative, does not increase their probative value. That probative value is outlined by the statute as one of affecting credibility.

True it is, as stated in *State* v. *Levine,* 117 Vt. 320, 91 A.2d 678 (1952), and reiterated in *State* v. *Bogart,* 132 Vt. 8, 312 A.2d 733 (1973), that evidence of other offenses is admitted to show motive, intent, knowledge, plan or purpose, or preparation, leading up to or connecting the respondent with commission of the offense charged. The prior convictions here relied upon had no such relevancy. They were, rather, within the rule stated in *State* v. *Kelley,* 65 Vt. 531, 536, 27 A. 203 (1892), excluding their use to establish a criminal tendency in the broad sense of the term, or a tendency to commit generally offenses like the one alleged. Such evidence was "effective only as it appealed to the tendency to believe that a man who committed a larceny at one time may very well have been guilty of the same offense at another." *Id.* at 540. Absent the probative value which the State sought to assign to these prior convictions, we conclude that the record as a whole did not justify submitting the question of intent to the jury, within the requirements of *State* v. *Levy, supra.* Respondent's motion for directed verdict on that ground should have been granted. Failing that, his motion for judgment n.o.v. should have been granted.

Since for the reasons outlined we are compelled to vacate the conviction below, we do not reach the arguments advanced by counsel in this Court with respect to the claimed incompetence of counsel for respondent in the trial court. We note, however, that we are cited to no authority permitting this issue to be raised on direct appeal, rather than in the post conviction proceedings permitted under 13 V.S.A. § 7131 *et seq.* We do not completely preclude the possibility that such attack might, in some instances, be successful. But to be so, all necessary facts would have to be apparent from the record of the trial itself, an unusual circumstance. Most, if not all, such claims are properly asserted in post conviction proceedings, wherein this Court has the benefit of facts found below. Nor would such relief be precluded, we feel, by the requirement of 13 V.S.A. § 7131 that the respondent be "in custody." His "permanent furlough" to New Hampshire authorities, a form of parole, would,

since it involves a curtailment of liberty, constitute a form of "custody." *Jones* v. *Cunningham,* 371 U.S. 236 (1963), relating to release on parole; *Hensley* v. *Municipal Court,* 411 U.S. 345 (1973), relating to release on personal recognizance.

*Judgment reversed and sentence vacated. Judgment of not guilty, notwithstanding the verdict, is entered.*