### State of Vermont v. George H. Zeisner

[340 A.2d 69]

Nos. 32-74, 33-74

Present: **Barney, C.J., Smith, Keyser, Daley and Larrow, JJ.**

Opinion Filed June 3, 1975

*Dale O. Gray, Esq.*, Caledonia County State's Attorney, St. Johnsbury, for the State.

*Natt L. Divoll, Jr., Esq.*, Bellows Falls, for Defendant.

**Larrow, J.** Respondent was tried by jury on two informations charging violations of 13 V.S.A. § 2002, on October 6, 1969, by designedly issuing two separate checks, drawn on the Hamden National Bank of Hamden, Conn., with intent to defraud because he knew he was not entitled to draw for the sum specified, and obtaining from one Hammang the discharge of debts over $25.00 in value. Dated that same day, the checks were matured, and a false token within the definition of 13 V.S.A. § 2003 if such knowledge of lack of entitlement existed. Convicted, he appeals.

The activities of the parties related to the claimed offense were many and varied, involving property sales, motel purchase and management, the promotion of extensive planned Canadian real estate development, and the construction of modular homes. Extensive recitation of details would not greatly illumine the issues here involved. Suffice it to say that, if all the State's testimony were believed by the jury, they could have found that the respondent did indeed draw the checks in question, and give them to Hammang in repayment of existing obligations or promises, at a time when he knew he had insufficient funds on deposit to cover them. His testimony that he thought checks given him by another would clear and cover the checks he issued, and that he apprised Hammang of these circumstances, had much substance; the deposits were in fact made by his wife, but to a wrong account, and the checks did not clear. But the evidence on this point was contradicted,

and, in spite of the fact that Hammang waited almost three years without very convincing explanation before making a criminal complaint, the jury could find the essential elements of the offenses charged. *State* v. *Berard*, 132 Vt. 138, 315 A.2d 501 (1974). A careful review of the evidence convinces us that respondent's motion for directed verdicts of acquittal, notwithstanding the verdicts, was properly denied.

Other questions relating to the admission of evidence, objected to at trial and made the basis for a motion to set aside the verdicts and grant a new trial, are not so quickly disposed of. Despite a warning to the prosecutor about the possible effects of "overkill", the trial court admitted evidence that (a) the respondent, over a period of several preceding months, had an admitted fund shortage resulting from his management of Hammang's motel, and (b) had, on several instances during the preceding year, obtained moneys from a person in Connecticut on the representation that he was investing for him, when in fact the asserted investments had not been made. As to the latter incidents, elicited by cross-examination of the respondent, some were admitted and some denied, with the respondent declining to explain those admitted on the ground that there was litigation pending with respect to them. He did, however, claim they were explainable, and the State, although it had indicated its intent to call the party involved as a witness, did not do so.

We have had recent occasion, in an appeal from the same trial court, to examine the propriety of admitting evidence of prior offenses on the issue of specific intent. *State* v. *McMann*, 133 Vt. 288, 336 A.2d 190 (1975). In that case, the prior offenses were more conclusively established, by evidence of convictions. There, as here, the prior offenses were relied on as proof of intent. The case was so argued by the State, and the charge did not negate the inference. Here we have not been furnished a transcript of the argument, but the charge clearly advises the jury that they may consider the Connecticut transactions on the issue of intent, and is silent on the motel transactions.

In *McMann*, we had occasion to reiterate the rules laid down in our prior cases. *State* v. *Levine*, 117 Vt. 320, 91 A.2d 678 (1952); *State* v. *Bogart*, 132 Vt. 8, 312 A.2d 733 (1973);

*State* v. *Kelley*, 65 Vt. 531, 27 A. 203 (1892). Without extensive repetition, evidence of prior offenses is admissible for various specific purposes, outlined in *McMann*. *See also Mollar* v. *State*, 333 A.2d 625 (Md. Ct. of Spec. App. 1975), discussing proof of identity as an exception to the general exclusionary rules. But we are unable to perceive how the evidence admitted below, as to prior offenses, rises any higher than "to establish a criminal tendency in the broad sense of the term." In *McMann*, the charge was attempted burglary, and the prior convictions were for robbery, closely similar offenses. Here the claimed offenses are not even that closely similar, nor are they as conclusively established. Despite the State's asserted claim that they were part of a "plan" or "scheme", the only such plan or scheme substantiated by the evidence seems to be one of a deceitful life, marked by previous criminal tendencies. However relevant on the question of sentence, if properly established, their usage to substantively establish guilt is precisely the type of usage we condemned in *McMann*. The trial court's apprehensions as to "overkill" were well grounded, and should have governed.

*In each case, the judgment is reversed and the cause remanded.*