STATE v. LOUIS M. NIEBURG.

October Term, 1912.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed January 21, 1913.

*Adultery—Evidence of Marriage—Testimony of Wife—P. S. 1592—"Marital Confidence"—Reputation—Comments of Counsel—Jury—Qualifications—Juror Serving as Talesman Within Two Years—P. S. 1477.*

In a prosecution for adultery, the testimony of respondent's wife that they were married at a designated time and place is sufficient to prove their marriage, and that testimony would not lead to a violation of "marital confidence" within the meaning of P. S. 1592, providing that husbands and wives shall not be competent witnesses for or against each other "as to a matter that, in the opinion of the court, would lead to a violation of marital confidence."

The "court" referred to in P. S. 1592, providing that husbands and wives shall not be competent witnesses for or against each other "as to a matter that, in the opinion of the court, would lead to a violation of marital confidence," is the trial court, and the exercise of its judgment in that regard is not, ordinarily, reviewable.

In a prosecution for adultery, the State may show that the woman with whom respondent is charged with having committed the act had a bad reputation for chastity, without showing respondent's knowledge of that fact, and, if respondent relies on his ignorance of the woman's reputation in explanation of conduct capable of an innocent construction, he must show that fact.

In a prosecution of a man for adultery, where he did not testify, but the woman did testify in his defence, the statement by the State's attorney in argument to the jury, "In the terrible disaster of the Titanic * * * the cry was, 'The woman first,' and in this case a like fact stands out in favor of the respondent; the cry was, 'The woman first' and the woman was put on the stand," was susceptible of the construction that it was a comment on respondent's failure to testify, but, as that intent was disclaimed by the State's attorney, the statement does not require a reversal.

Under P. S. 1477, providing that a person, regularly drawn to serve as
    grand or petit juror from a town of more than 200 inhabitants
    shall be disqualified from again serving as juror for two years
    from such drawing, one who has served as a petit juror, regularly
    drawn from such a town, is not disqualified from afterwards serv-
    ing as a talesman within the time limited.

INFORMATION charging adultery. Plea, not guilty. Trial
by jury at March Term, 1912, Chittenden County, *Miles,* J.,
presiding. Verdict, guilty, and judgment thereon. The re-
spondent excepted. The opinion states the case.

*John G. Keenan* and *M. H. Alexander* for the respondent.

*John G. Sargent,* Attorney General, and *Henry B. Shaw,*
State's Attorney, for the State.

MUNSON, J. The charge is adultery. The marriage was
shown by the testimony of Lena Nieburg, who testified that she
was married to the respondent in Russia, twenty-three years ago.
It was objected that this was not the proper way to show a mar-
riage in cases of this class. The testimony of the respondent's
wife was direct evidence of the fact of his marriage, although
she was not an eye-witness of the ceremony, strictly speaking;
and if she was a competent witness her testimony was sufficient
proof of the marriage. Direct proof may consist either of the
testimony of a witness present at the ceremony, or of either of
the parties to the ceremony, if competent to testify. 2 Green.
§471.

This testimony was objected to on the further ground that
the matter was one which would lead to a violation of the marital
confidence. The objection is based upon certain phraseology
of P. S. 1591, which was first enacted in 1904, and reads as
follows: ''Husband and wife shall be competent witnesses for
or against each other in all causes, civil or criminal, except that
neither shall be allowed to testify against the other as to a state-
ment, conversation, letter or other communication made to the
other or to another person; nor shall either be allowed in any
case to testify as to a matter which, in the opinion of the court,
would lead to a violation of marital confidence. * * *'' It is
difficult to see how this objection can avail the respondent. The

court referred to is obviously the trial court, and the exercise of its judgment in determining what the testimony may lead to cannot be reviewable in ordinary circumstances. But the question here is merely what the evidence was; and it is clear that the fact of marriage is not a matter of marital confidence, but one of public notoriety. The views urged by counsel are mainly those which governed the question at common law; and these can have no force against a statute which expressly makes the wife a competent witness against her husband in criminal cases.

The State was permitted to show that the woman involved in the charge had a bad reputation for chastity,—against the objection that there was no evidence that this reputation was known to the respondent. Upon a charge of adultery, whether in civil or criminal proceedings, where there is evidence of conduct tending to establish the charge, the bad reputation for chastity of the person with whom the offence is alleged to have been committed may be shown, as tending to render the occurrence of the adulterous act more probable. Wig. Ev. §68; *Com.* v. *Gray,* 129 Mass. 476, 37 Am. Rep. 378; *Sutton* v. *State,* 124 Ga. 815, 53 S. E. 381; *Blackman* v. *State,* 36 Ala. 295; *State* v. *Eggleston,* 45 Or. 346, 77 Pac. 738. See *Clement* v. *Kimball,* 98 Mass. 535. The nature of the offence and the bearing of the probative fact preclude the idea that the admissibility of the evidence depends upon proof that the party charged had previous knowledge of the fact. If the respondent relied upon his ignorance of the woman's reputation as explanatory of conduct capable of an innocent construction, the fact was for him to show.

This woman was called for the defence, but the respondent did not take the stand. In the course of his argument the State's attorney said: "In the terrible disaster to the Titanic * * the cry was, 'The women first.' In this case a like fact stands out in favor of the respondent; the cry was, 'The woman first,' and Hattie Cushing was put on the stand." Respondent's counsel objected to this as a comment on the respondent's failure to take the stand, and the State's attorney disclaimed any intention to suggest this; but the court allowed an exception. The remark was susceptible of the construction given it by respondent's counsel, and had better have been omitted; but in view of its

ambiguity and the complete disclaimer we do not feel called upon to treat it as reversible error.

A motion to set aside the verdict was filed on the ground that one of the jurors, who was called as a talesman, had within two years previous to the trial been regularly drawn as a petit juror in Franklin County, from a town containing over two hundred inhabitants, and had served as such. The statute upon which this motion is based reads as follows: "Each person drawn by the sheriff or his deputy to serve as grand or petit juror from a town containing more than two hundred inhabitants shall be disqualified from again serving as juror for two years from such drawing." It has been held under this statute that a previous service as talesman does not disqualify the person from serving as a juror regularly drawn within two years thereafter. *First Nat. Bank* v. *Post,* 66 Vt. 237, 28 Atl. 989. The question here is whether one who has served as a juror regularly drawn is disqualified from afterwards serving as a talesman within the time limited. It was said in the case cited that this provision does not apply to a person drawn as a talesman, and we think this must be said whether the service as talesman follows or precedes the regular drawing.

*Judgment that there is no error and that the respondent take nothing by his exceptions.*