STATE *v.* EUGENE SHAW.

February Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed May 15, 1915.

*Adultery—Evidence of Alleged Husband—P. S. 1592—Judicial
    Notice—Towns and Counties—Presumption of Legitimacy
    of Child Born in Lawful Wedlock—Rebuttable—Necessary
    Evidence—Proof Beyond Reasonable Doubt—Instructions—
    Sufficiency—Exception to Instruction—Availability.*

In a prosecution for adultery, testimony of the husband of respondent's
    alleged paramour that witness and the paramour were married
    at a designated time and place is competent, and is sufficient to
    prove the marriage.

The Court will take judicial notice that the town of Sheffield is in the
    north part, and the town of Peacham is in the south part, of
    Caledonia County, and that in a direct line between them are two
    other towns, neither of which is less than the ordinary width of
    six miles, north and south.

In a prosecution of a man for adultery claimed to have been committed
    when his alleged paramour, a married woman, conceived the child
    of which she was delivered on June 2, 1913, where the State's evi-
    dence tended to show that the probable date of the offence was the
    last week of August, 1912, when the alleged paramour and her
    husband were living apart by mutual consent, she in the town
    of Peacham and he in the town of Sheffield, and that sexual inter-
    course was not had between them, but respondent's evidence tended
    to show such intercourse in the latter part of August, 1912, and
    the record shows nothing further as to the State's evidence tending
    to show non-access of the alleged paramour's husband to her during
    the time wherein he could have been the father of her child, error
    does not appear in the admission, subject to respondent's excep-
    tion on the grounds of irrelevancy and immateriality, of testimony
    of her attending physician that she gave birth to a full-term child
    on June 2, 1913, and that the ordinary period of gestation is 280
    days, though the time may vary a little.

A child born in lawful wedlock is presumed to be the child of the husband, but that presumption may be rebutted by proof of nonaccess; and, where the husband and wife are living apart, nonaccess may be shown by the facts and circumstances.

The presumption that a child born in lawful wedlock is the child of the husband can be repelled only by proof beyond a reasonable doubt; but an instruction to the jury that the legitimacy of the child is presumed until that presumption "is encountered by such evidence as proves to the satisfaction" of the jury that sexual intercourse did not take place between the husband and wife during the time wherein he could have been the father of the child was equivalent to an instruction that the evidence must be such as to satisfy them beyond a reasonable doubt.

In a prosecution for adultery, where an important witness for respondent had testified at an inquest held previous to the trial and under P. S. 529, as amended by No. 223, Acts 1912, and that testimony was not introduced in evidence, except that in cross-examination witness was asked whether he gave specified testimony at the inquest, and to some of those questions he answered in the affirmative, to others in the negative, and to still others that he might have, "could not say," it was error to allow an attorney for the State, in argument to the jury, to read from the witness's alleged testimony at the inquest extracts that tended to contradict the witness, but to which he had not testified affirmatively at the trial.

In a prosecution for adultery, an instruction, at the conclusion of the court's charge, that where an adulterous disposition is shown between a man and a woman, and the opportunity is found to have existed for them to have sexual intercourse, the law fixes as a rule that jurors may be guided by, that where the discretion of a reasonable and just man would lead to the conclusion that sexual intercourse had taken place, it would be proper for the jury so to find, is not objectionable as allowing a conviction based merely on the adulterous disposition and the opportunity to gratify it, or if the guarded discretion of a reasonable and just man would lead to the conclusion that sexual intercourse had taken place, where the court immediately further instructed: "Now apply that standard to this case, what do you say about it? You take into account all the evidence, and what you have been advised in reference to the law of the case, and say whether the respondent is guilty or not guilty," and the previous charge had so carefully,

fully, and correctly instructed as to all the elements necessary for a conviction, particularly explaining the term "reasonable doubt" and the law relating to the presumption of innocence and the use of that presumption as evidence, and throughout had taken such great pains to keep in the minds of the jury the governing principles of the law, that the questioned instruction could not have diverted the jury therefrom.

A general exception to a specified instruction is not available, unless the instruction is wholly unsound.

INFORMATION charging adultery. Plea, not guilty. Trial by jury at the December Term, 1913, Caledonia County, *Fish,* J., presiding. Verdict, guilty; and judgment thereon. The respondent excepted. The opinion states the case.

*Simonds, Searles & Graves* for the respondent.

In *Patterson* v. *Gaines,* 6 How. 550, 589, 12 L. ed. 553, 568, Mr. Justice Wayne said: "Once the marriage is proved, nothing shall be allowed to impugn the legitimacy of the issue short of the proof of facts showing it to be impossible that the husband could be the father," and so are the authorities. *Rex* v. *Luffe,* 8 East. 207, 9 Rev. Rep. 406; *Adger* v. *Ackerman,* 52 C. C. A. 568, 115 Fed. 124; *Bunel* v. *O'Day,* 125 Fed. 317; *Bowles* v. *Bingham,* 2 Munf. 442, 3 Munf. 599, 5 Am. Dec. 497; *Vernon* v. *Vernon,* 6 La. Ann. 243; *State* v. *Rose,* 75 N. C. 239; *State* v. *Liles,* 134 N. C. 735, 47 S. E. 750; *Mink* v. *State,* 60 Wis. 583, 19 N. W. 445, 50 Am. Rep. 386; *Watts* v. *Owens,* 62 Wis. 512, 22 N. W. 720; *Bethany Hospital Co.* v. *Hale,* 64 Kan. 367, 67 Pac. 848; *State* v. *Lavin,* 80 Iowa 555, 46 N. W. 553; *Egbert* v. *Greenwalt,* 44 Mich. 245, 6 N. W. 654; *Phillips* v. *Allen,* 84 Mass. 453; *Sullivan* v. *Kelly,* 85 Mass. 148; 1 Greenl. on Ev. §28.

*N. A. Norton,* State's Attorney, for the State.

WATSON, J. The information charges that the respondent, on, to wit, the fifteenth day of June, 1912, committed the crime of adultery with one Carrie N. Gray, then the wife of one Edwin W. Gray.

Subject to exception on the ground that it was not proper evidence of the fact, the State was permitted to show the mar-

riage of said Carrie N. Gray by the testimony of her alleged husband. The question here raised was expressly ruled the other way on the statute (P. S. 1592) in *State* v. *Nieberg*, 86 Vt. 392, 85 Atl. 769, and we see no reason for departing from that holding.

The State elected to ask for a conviction for an alleged act of adultery committed at the time of, and responsible for, the conception, by Mrs. Gray, of a child which was born the second day of June, 1913, the evidence tending to show the probable date of the offence to have been during the last week of August, 1912.

The evidence on the part of the State tended to show that Mrs. Gray was then living in the town of Peacham, that her husband was then living in the town of Sheffield, and that sexual intercourse was not had between them. On the other hand, the respondent's evidence tended to show that the husband visited his wife and had sexual intercourse with her at this time, that is, in the latter part of August, 1912. Subject to exception on the ground that the evidence was irrelevant and immaterial, the State was permitted to show by the attending physician that, on June 2, 1913, Mrs. Gray gave birth to a full-term child. The witness further testified that the ordinary period of gestation is 280 days; that the time may vary, though not a great deal, save in a few cases where the actual period can not be ascertained.

Other than above stated, the exceptions do not show the evidence on the part of the State, tending to show non-access (that is, no sexual intercourse) of the husband to the wife at such a time as that, in the course of nature, said child could have been begotten. There is nothing indicating a separation by legal dissolution of the marriage relation, and so we construe the exceptions to mean that the husband and wife were, by consent, living separately in the different towns named, and some miles apart.

The Court will take notice that the town of Sheffield is situated in the north part of the county of Caledonia, and that Peacham is situated in the southern part of the same county, there being in direct line between them two other towns, neither of which is less than the ordinary width of six miles, north and south.

It is contended by the respondent that the evidence of the birth of the child was erroneously received, because the evidence in the case did not show the impossibility of the husband's access to the wife at the time when the child was begotten. Early English and some American cases support this position. But this

rule was repudiated in England more than a century ago (in 1811) in the *Banbury Peerage* case, 1 Sim. & Stu. 153, when, in answer to questions put to them by the House of Lords, for their advice in point of law, the judges unanimously expressed their opinion, "that in every case where a child is born in lawful wedlock, the husband not being separated from his wife by sentence of divorce, sexual intercourse is presumed to have taken place between the husband and wife, until that presumption is encountered by such evidence as proves, to the satisfaction of those who are to decide the question, that such sexual intercourse did not take place at any time, when, by such intercourse, the husband could, according to the law of nature, be the father of the child."

In 1837 the question was fully considered by the House of Lords in *Morris* v. *Davies,* 5 Clark & F. *163. There the husband and wife after living together for ten years and having one child agreed to live apart, and they did thereafter so live at a distance of fourteen or fifteen miles from each other. Although they separated, it did not appear that they were in a state of variance or hostility with each other. A young man who had been taken into their service was suspected of some familiarity with the wife, and he accompanied her, together with other servants, to the place of her residence after her separation from her husband; yet notwithstanding this circumstance, some intercourse still continued to be kept up between the husband and wife: the husband was in the habit of going over to the place where she resided, and on some of these visits he, in company with her, gave directions with respect to the conduct and management of the property; on more than one occasion he was in her house; and he sometimes walked with her. Some four years after their separation the wife became pregnant, and in the course of time she was delivered of a child. The court below said that in the absence of all evidence, either on the one side or the other, the law would presume that sexual intercourse took place between the husband and wife in the spring when the child was begotten; but on the evidence in the case it was a question of fact whether such intercourse did take place. On the appeal, the Lord Chancellor said the opinions of the judges in the *Banbury Peerage* case were of infinite value as the unanimous opinions of the judges of England; that undoubtedly they derive much greater weight as being submitted to the House of Lords,

and so fitted in with the facts of the case as to be adopted by the House and made the ground of its decision. The Lord Chancellor further said he had no doubt that their Lordships were entitled to look into all the evidence of the case, in order to satisfy their minds whether sexual intercourse did take place between the husband and wife, at such a time as might make it possible for him to have been the father of the child. Lord Lyndhurst delivered an opinion to the same effect.

Mr. Starkie says that if there be a separation by consent, the presumption of law will still be in favor of access of the husband to the wife and of legitimacy till the contrary be proved. Stark. Ev. IV. *218. And on page *219 the same author says, "Where the husband is within the realm, it is not incumbent on the party alleging bastardy to prove that the husband could not by any possibility have had access to the wife; it is sufficient to adduce such circumstantial evidence as satisfies the minds of the jury." And so in principle is *Hargrave* v. *Hargrave,* 9 Beav. 552. In Thayer on Evidence, Appendix A, 540, it is said: "Formerly, all children born in lawful wedlock, if the husband was not impotent, or beyond the four seas during a period exceeding that of gestation, were legitimate; nor could evidence to the contrary be received in a court of law. The presumption of law was then imperative; whatever might have been the real facts of the paternity, and however clearly they might be proved, still the husband was considered as the father of his wife's children. Since that time, however, the rule has been changed, and probable evidence that the husband was not the father of the child, is admissible." The author classes this presumption with those that are disputable or rebuttable, and like the presumption of innocence sufficient to place the burden of proof upon the party asserting to the contrary. In *Randolph* v. *Easton,* 25 Pick. 242, Chief Justice Shaw said, "It is true that a child born in wedlock, shall be presumed to be the child of the husband; but it is a presumption of fact, which may be rebutted by proof of non-access." And where the husband and wife live apart, non-access may be shown by the facts and circumstances. *Commonwealth* v. *Wentz,* 1 Ashm. 269; *Commonwealth* v. *Shepherd,* 6 Bin. 283, 6 Am. Dec. 449; *Re Matthews' Estate,* 153 N. Y. 443, 47 N. E. 901; *Wright* v. *Hicks,* 12 Ga. 155, 56 Am. Dec. 450; S. C. 15 Ga. 160, 60 Am. Dec. 687; *Phillips* v. *Allen.* 2 Allen 453; *Herring* v. *Goodson,* 43 Miss. 392; *Orthwein* v. *Thomas,*

127 Ill. 554, 21 N. E. 430, 11 Am. St. Rep. 159, 4 L. R. A. 434. The case of *Pittsford* v. *Chittenden,* 58 Vt. 49, 3 Atl. 323, relied upon by the respondent, is not to the contrary. There the facts were such as to prove that the husband (in the language of the court) "clearly had no opportunity of access to" the wife, and consequently the impossibility of his being the father of her child. The court went on farther than to hold that the illegitimacy of the child was thus established.

On the record before us, we can not say that the evidence of the birth of the child was either irrelevant or immaterial, and hence error in the ruling admitting it does not appear.

Were the question as to the weight or sufficiency of the evidence to rebut the presumption of legitimacy presented only by the motion for a verdict, it would be quite enough to say that it need not go to the extent of showing it impossible that the husband could have been the father of the child. But by exception to the charge, the question is raised as to whether the rule laid down by the court, is correct, namely, that legitimacy of the child is presumed, until the presumption "is encountered by such evidence as proves to the satisfaction of" the jury that sexual intercourse did not take place between the husband and the wife at any time when by such intercourse he could have been the father of the child. It is urged that to rebut the presumption, proof beyond a reasonable doubt is required.

It will be noticed that the court charged in the exact language of the rule stated in the *Banbury Peerage* case, so the question is, Just what did the judges of England mean by their saying that the evidence must be such as to prove "to the satisfaction" of those who are to decide the question, etc. ? In *Head* v. *Head,* 1 Sim. & Stu. 150, the Vice-Chancellor said the evidence must be of a character to exclude all doubt, and that when the judges in the *Banbury Peerage* case spoke of satisfactory evidence upon this subject, they must be understood to have meant such evidence as would be satisfactory, having regard to the special nature of the subject. In *Morris* v. *Davies,* in the court of chancery, Lord Lyndhurst said the case of *Head* v. *Head* does not in the slightest degree affect the opinion of the judges in the case of the *Banbury Peerage;* that it recognizes and adopts that opinion, and all that is said by the Master of the Rolls is, that the court must be satisfied, not upon a mere balance of probabilities, but upon evidence which must be such as to exclude all

doubt, that is, reasonable doubt, in the minds of the court or jury, to whom the question is submitted. And sitting in the House of Lords on appeal, his Lordship said the presumption of law as to legitimacy is not to be broken in upon, or shaken by a mere balance of probability; that the evidence for the purpose of repelling it must be strong, distinct, satisfactory, and conclusive. Lord Chancellor Cottenham said their Lordships were to ask themselves whether there was "satisfactory proof" that the child born to the wife was not the child of the husband. Lord Langdale laid it down in *Hargrave* v. *Hargrave,* (in 1846,) that there must be "clear and satisfactory proof." In the Aylesford Peerage, 11 App. Cas. 1, 11 R. C. 523, decided by the House of Lords in 1885, Lord Blackburn said the case of *Morris* v. *Davies* shows that the presumption of legitimacy can be rebutted by the conduct of the parties, taking the whole *res gestae* raising a strong and irresistible conclusion that the child born was not the child of the husband, but the child of another. The foregoing cases seem to show pretty clearly that the rule stated in the case of *Banbury Peerage* has been understood by the courts of England as being the equivalent of proof "beyond a reasonable doubt." Such, too, must have been the understanding of the Supreme Judicial Court of Massachusetts when rendering its decision in *Phillips* v. *Allen,* cited above, where they lay down the rule requiring proof to the degree last above stated, citing in support thereof, among other authorities, the English cases of *Head* v. *Head,* and *Morris* v. *Davies,* noticed above. To the same effect is the definition of "a reasonable doubt," as given by Chief Justice Shaw in *Commonwealth* v. *Webster,* 5 Cush. 295, 52 Am. Dec. 711: "It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge. * * * a certainty that convinces and directs the understanding, and satisfies the reason and judgment, of those who are bound to act conscientiously upon it." In *People* v. *Wreden,* 59 Cal. 392, substantially the same question was before the court. It is there said: "Is not the expression 'clearly established by satisfactory proof' the full equivalent of 'established by satisfactory proof beyond a reasonable doubt?' How can a fact be said to be clearly established so long as there is a reasonable doubt whether it has been established at all? There

can be no 'reasonable doubt' of a fact after it has been clearly established by satisfactory proof.'' Other cases sustaining the same position are, *Commonwealth* v. *Costley,* 118 Mass. 1; *Cross* v. *Cross,* 3 Paige 139, 23 Am. Dec. 778; *People* v. *Bonifacio,* 190 N. Y. 150, 82 N. E. 1098; *State* v. *Brinte,* 4 Pennewill, 551, 58 Atl. 258; *Orthwein* v. *Thomas,* cited above.

We therefore hold that the charge given as to the measure of proof necessary to rebut the presumption of legitimacy of the child, was equivalent to instructing the jury that the evidence must be such as to satisfy them beyond a reasonable doubt, and consequently it was in compliance with the law as claimed by the respondent.

The respondent's father and mother, Eugene H. Shaw and Mrs. Susan Shaw, were important witnesses in his behalf. In arguing the case to the jury, one of the attorneys for the State read to the jury alleged extracts from the testimony of these witnesses, taken at an inquest held sometime previous to the trial, in accordance with the provisions of the statute (P. S. 5529 as amended by No. 223, Acts of 1912) authorizing such an inquest upon any criminal matter under investigation by the state's attorney. To this respondent seasonably objected and was allowed an exception.

Respecting the alleged testimony of Eugene H. Shaw, thus read to the jury, there was no evidence tending to show that it was in fact given by Mr. Shaw, and the same was not introduced in evidence nor in any proper manner before the court or jury, beyond what the witness testified to it at the trial in cross-examination: he was asked by the state's attorney whether he testified at the inquest in answer to certain several questions as follows—giving the questions and answers. Some of these questions thus asked, the witness answered in the affirmative; some of them he answered in the negative; and some, he answered that he might have, could not say whether he did or not. There can be no doubt that so much of the alleged testimony of the witness before the inquest as was not affirmatively testified to by him at the trial, was not in the case for any purpose, and to permit the attorney for the State to read it before the jury was to permit him to go beyond the evidence and to put before the jury in an improper manner prejudicial matter well calculated to discredit the testimony of the witness, given at the trial. This was error.

9

The other exceptions taken in the course of the argument, are not considered, since they are not likely to recur on another trial.

In the concluding paragraph of the charge, the court told the jury that in cases of this sort, where an adulterous disposition is shown between a man and woman, and the opportunity is found to have existed for them to have sexual intercourse, the law fixes as a rule that jurors may be guided by, that where the guarded discretion of a reasonable and just man would lead to the conclusion that sexual intercourse had taken place, it would be proper for the jury so to find; further saying to the jury immediately in connection therewith: ''Now, applying that standard to this case, what do you say about it? You take into account all the evidence, and what you have been advised in reference to the law of the case, and say whether this respondent is guilty or not guilty.'' An exception was taken to the part preceding the semicolon, as shown above. In argument the portion of the charge covered by this exception is in effect divided into two parts, each of which is said to be defective: the first part, in that it was improper to instruct that a conviction could be based upon merely an adulterous disposition between the man and woman, and an opportunity for sexual intercourse; and the second part, in that the jury could convict if the guarded discretion of a reasonable and just man would lead to the conclusion that sexual intercourse had taken place. Let the instructions be so construed, and the exception treated accordingly. Early in the charge, the court stated as the essential questions of fact to be established by the prosecution in order to make out a case, the marriage of the *particeps criminis*, the life of her husband at the time when the offence was alleged to have been committed, and the act of adultery between her and the respondent. In connection therewith the court carefully and correctly instructed the jury that the burden rested upon the State to prove these facts beyond a reasonable doubt, particularly explaining the force of the words ''reasonable doubt;'' also then charged fully and correctly the law of presumption of innocence, and the character and use of that presumption as evidence. These rules of law thus stated to the jury were subsequently referred to by the court several different times in the course of the charge, the last time being immediately after, and in connection with, the part to which the exception under consideration was taken. And

when the court there told the jury that they could apply the standard mentioned, they were also given to understand in the same connection, that they must take into consideration all the evidence, and the law of the case as they had been advised concerning it, (which included the burden and measure of proof, and the presumption of innocence,) and on the whole say whether the respondent was guilty or not guilty. In view of the great care taken by the court to keep the instructions pertaining to the governing principles of law, in the minds of the jury throughout the charge, it is almost presumptuous to think that, by the part of the charge complained of, the jury were diverted from the legal rules essential to right conclusions and a just verdict. The other claimed defect is not particularly noticed; for since the exception was to the whole of that part of the charge, and since one element thereof was without error, the exception is without avail. *State* v. *Sargood,* 77 Vt. 80, 58 Atl. 971; *Needham* v. *Boston & Maine R.,* 82 Vt. 518, 74 Atl. 226.

An exception was taken to the failure of the court to charge that there could be no conviction, except for an act committed at the time the child was begotten. But the charge given was to that effect. The jury were instructed that the State had elected to rely for the substantive offence, upon "one offence, and there can be but one found," which it says was committed at the time of the conception of the child which was born on the second day of June, 1913. They were then told to bring their attention to that period of time and to say whether on the evidence and the law laid down by the court, the respondent was guilty,—in effect if the case had not been so made out, to find him not guilty.

Exception was also taken because the court did not tell the jury that the fact of the respondent's being brought into court and put on trial, was not evidence of his guilt and was not to be taken against him. Whatever danger of prejudice there may be, arising from being charged with guilt and held on that charge, it is within the purpose of the rule of the presumption of innocence to obviate such danger. Thay. Ev. 348; *State* v. *Costa,* 78 Vt. 198, 62 Atl. 38.

*Judgment and sentence reversed and cause remanded for a new trial.*

.TAYLOR, J., dissenting. I am unable to agree that the exception to the reading in argument of the extract from the testimony of respondent's father given at the inquest presents reversible error. The record states that the extract read tended to contradict the witness and it will be.presumed that such was the use made of it. So far as appears, no ground of objection was stated and it must be taken that none was given. It is now urged that no foundation was laid for the impeachment. Such foundation as there was is found in the cross-examination of the witness. To a question embodying the questions and answers read, the witness answered, "I might have at that time." While witness said, when pressed, that he did not remember that particular piece .of testimony, he promptly admitted having testified to the same thing in substance. It is true that the precise language had not been proved affirmatively; but the substance had been admitted in language so nearly identical that the rights of the respondent could not possibly have been prejudiced. I quote for comparison (1) the questions and answers read and (2) the questions and answers admitted by the witness in cross-examination relating to the same matter.

(1)

Q. Tell the court what you have seen.

A. Well, I have seen them lying on the bed together several times.

Q. How often has that occurred?

A. About every night.

Q. Well, nearly every night in the summer time?

A. Well, nearly every night in the summer time.

(2)

Q. Now, have you been to bed a good many times and left them together in that room?

A. Yes, sir.

Q. Lying on the bed?

A. Yes, sir.

Q. Well, that was the ordinary occurrence for them to be *there* when you went to bed at night?

A. Yes, sir; most nearly every night.

The word "there," taken in connection with what goes before, evidently means "lying on the bed together." The Court should not hesitate to find, nor in the interest of speedy justice fail to find affirmatively, that, error if such there was, was clearly harmless.

The judgment should be sustained for an additional reason. It is perfectly apparent that the court in ruling had in mind the substance of the testimony which the witness had admitted having given but failed for the moment to recall the particular questions and answers. The failure to indicate the ground of objection was calculated to and evidently did mislead the court. If their attention had been directed to the matter now complained of by a specific objection, I have no doubt it would have been promptly remedied. In the circumstances of this case it should be held that failure to state the ground of objection made the exception unavailable.

*I would overrule the exception and affirm the judgment.*

*Powers,* J., concurs in this dissent.