IN RE ESTATE OF HENRY JONES,

LEONARD JONES, APPELLANT.

May Term, 1939.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT and JEFFORDS, JJ.

Opinion filed October 3, 1939.

*H. C. Shurtleff* for the appellant.

*Robert H. Ryan* for the appellees Gerald F. Jones and Glenola E. Jones.

*Webster E. Miller* for the appellee Lloyd Jones.

STURTEVANT, J.   One Carl B. Lown, of Buffalo, New York, as next friend and guardian *ad litem* of Leonard Jones, the appellant, a minor, took an appeal from the final decree of the Probate Court for the District of Washington issued upon the estate of one Henry Jones, deceased, to Washington county court. Leonard claimed to be a son of said Henry Jones, deceased, and as such entitled to a distributive share of the estate of said Henry Jones.   His claim was opposed by three Jones children, namely, Lloyd, Gerald and Glenola Jones.   Gerald is of age but under guardianship.   Guardians *ad litem* were appointed below for the minors, Lloyd and Glenola.   The court below referred to appellant as the plaintiff and the three Jones children, alleged heirs of decedent, as defendants and we will do so in this opinion. How these children were related to decedent is not shown by the record.   A jury trial was had and a verdict returned, finding that said plaintiff was not the son of said Henry Jones, deceased, and judgment on the verdict was entered.   The case is here on plaintiff's exceptions: (1) To the denial of plaintiff's motion for

a directed verdict; (2) To the failure of the court to charge "that the burden of proof is on the defendants to prove that Henry Jones did not have sexual intercourse with his wife at such a time as would procreate this child, Leonard Jones''; (3) "To the failure of the court to charge that proof of non-access must be clear and to the satisfaction of the jury''; (4) To the denial of plaintiff's motion to set aside the verdict.

At the opening of the trial below defendants conceded that the plaintiff, Leonard Jones, was born to Mary Jones, wife of the intestate, during wedlock, on August 19, 1923. This concession being made, plaintiff rested his case. Defendants claimed that at the time Leonard Jones was begotten the intestate, Henry Jones, did not have access to his wife, Mary, mother of Leonard, and introduced evidence tending to prove such contention.

■ ■ The questions raised by plaintiff's exceptions taken all together may be stated as follows: When a person is born in wedlock and it is claimed that he is illegitimate, who has the burden of proving the facts establishing such illegitimacy and what is the degree of proof required? Plaintiff contends that the law answering these questions is as set forth by this Court in the case of *State* v. *Shaw*, decided at the February Term, 1915, reported in 89 Vt. 121, 94 Atl. 434, L. R. A. 1915F, 1087. Defendants make no question but that at the time of the decision in this case it was the law in this State that a child born in wedlock is presumed to be legitimate, that this presumption may be rebutted by proof of nonaccess and that where the husband and wife are living apart nonaccess may be shown by facts and circumstances, and that while the proof need not go to the extent of showing it impossible that the husband was the father, the degree of proof to rebut the presumption must be beyond a reasonable doubt. However, the defendants contend that our law on the questions before us has been changed by the decision of this Court in the case of *Tyrrell* v. *Prudential Insurance Company of America,* decided at the January Term, 1937, and reported in 109 Vt. 6, 192 Atl. 184, 192. The rule laid down in the Tyrrell case relied upon by defendants in support of this contention is as follows: "A disputable presumption is a rule of law to be laid down by the court, which shifts to the party against whom it operates the burden of evidence, merely. It points out the party on whom lies the duty of going forward with evidence

on the fact presumed. And when that party has produced evidence fairly and reasonably tending to show that the real fact is not as presumed, the office of the presumption is performed, and the fact in question is to be established by evidence as are other questions of fact, without aid from the presumption, which has become *functus officio*. To translate this statement into the language of this Court, all such presumptions are locative, merely. A presumption, of itself alone, contributes no evidence and has no probative quality. It takes the place of evidence, temporarily, at least, but if and when enough rebutting evidence is admitted to make a question for the jury on the fact involved, the presumption disappears and goes for naught. In such a case the presumption does not have to be *overcome* by evidence; once it is confronted by evidence of the character referred to, it immediately quits the arena. The rule we now adopt applies to all disputable presumptions, including the presumption of innocence."

It therefore becomes necessary to determine the basis and reason for the law above stated as to burden and degree of proof required to rebut the presumption of legitimacy when a child is born in wedlock.

According to the very early common law in England no evidence could be introduced to show that a child born in wedlock was illegitimate. With the advancement of civilization and the recognition of the rights of personalty, the presumption could be rebutted by evidence that the husband was impotent or was beyond the four seas of England at the time of conception. 33 Harv. L. Rev. 306; 7 A. L. R. 330. In 1811 in the *Banbury Peerage* case, 1 Sim. & Stu. 153, it was held "that in every case where a child is born in lawful wedlock, the husband not being separated from his wife by sentence of divorce, sexual intercourse is presumed to have taken place between the husband and wife until that presumption is encountered by such evidence as proves, to the satisfaction of those who are to decide the question, that such sexual intercourse did not take place at any time, when, by such intercourse, the husband could, according to the law of nature, be the father of the child." In the case of *State* v. *Shaw, supra,* this court held that the expression "to the satisfaction of those who are to decide the question" was equivalent to "beyond a reasonable doubt." In the English case of *Hargrave* v. *Hargrave,* decided in 1846, 9 Beav. 553, 555, it was held that

the presumption of legitimacy of a child born in wedlock "may be wholly removed by proper and sufficient evidence, showing that the husband was (1) impotent; (2) entirely absent so as to have no intercourse or communication of any kind with the mother; (3) entirely absent at the period during which the child must, in the course of nature, have been begotten; or (4) only present under such circumstances as offered clear and satisfactory proof that there was no sexual intercourse."

The law has not gone to the full extent of regarding the presumption as based merely on logical inference. Almost universally it requires of rebutting evidence a strength or clearness greater in degree than that capable of rebutting the ordinary presumption of fact. 33 Harv. L. Rev. 306, 307.

Professor Wigmore in his work on Evidence, vol. 1, sec. 164, in discussing the subject of birth during marriage to show legitimacy states: "It is also true that, even where the birth occurs a year or more after the marriage, it is possible that the begetting intercourse was another man's, but it is still exceedingly more likely that it was that of B, the husband. Upon this likelihood is founded a rule of procedure, namely, the presumption of legitimacy (post No. 2527). No controversy of admissibility arises." Sec. 2527 of vol. 4, Wigmore on Evidence, above referred to, states: "That a child born of a married woman during wedlock is presumed to be the child of her then husband is uniformly conceded. The only doubt has been whether and how far this presumption is conclusive; i.e., to what extent is it a fixed rule of substantive law defining the legal quality of legitimacy," and in sec. 2492, vol. 4, of this same work on evidence, speaking of conclusive presumptions, Professor Wigmore states as follows: "In strictness there can be no such thing as a 'conclusive presumption.' Whenever from one fact another is conclusively presumed, in the sense that the opponent is absolutely precluded from showing by any evidence that the second fact does not exist, the rule really provides that where the first fact is shown to exist, the second fact's existence is wholly immaterial for the purpose of proponent's case; and to provide this is to make a rule of substantive law and not a rule apportioning the burden of persuading as to certain propositions or varying the duty of going forward with evidence. The term has no place in the principles of evidence (although the history of a 'con-

clusive presumption' often includes a genuine presumption as its earlier stage) and should be discarded." In 1 Elliott on Evidence, sec. 93, it is stated: "When a presumption is called a strong one, like the presumption of legitimacy, it is meant that it is accompanied by another rule relating to the weight of evidence to be brought in by him against whom it operates." Also, see Thayer, Prelim. Treat. Ev., pp. 336, 337, 563 and 576, and Starkie, Ev., tenth edition, *760.

It follows from the foregoing that when a child is born in wedlock the burden and degree of proof to establish illegitimacy is fixed by a rule of substantive law and not by the presumption itself, and while this rule accompanies the presumption as in the case of the presumption of innocence, it is the rule and not the presumption that fixes the burden and degree of proof. *Saunders* v. *Fredette,* 84 N. H. 414, 151 Atl. 820.

In 33 Harvard Law Review at page 308 appears the following statement: "A peculiarity in the operation of the presumption of legitimacy deserves notice. A leading authority on evidence, Professor J. B. Thayer, laid it down as an invariable rule that the burden of proof is fixed by the pleadings and never shifts during the trial, and that the only function of a presumption is to shift the burden of going forward. But the law undoubtedly is that once the fact of birth in wedlock is shown, the presumption of legitimacy continues until overcome by evidence at least greater than a mere preponderance. It would seem to follow that the presumption necessarily involves a shifting of the burden of proof. If this is true, Professor Thayer's proposition may be maintained only by concluding that the presumption of legitimacy is not a presumption at all, but a special rule going to the weight of proof required. It seems more desirable, however, to retain the universal nomenclature for this law respecting birth in wedlock and to recognize it as an exception—probably the only one—to Thayer's general proposition that a presumption shifts only the burden of going forward with evidence."

We agree that the law undoubtedly is that once the fact of birth in wedlock is shown the degree of proof required to rebut the presumption of legitimacy is greater than a mere preponderance of evidence. However, we do not follow the suggestion that a shifting of the burden of proof, in the sense that the plaintiff has been relieved of the burden of persuasion, has

occurred here or that the function of this presumption is an exception to the general rule that a presumption shifts only the burden of going forward with evidence. On the question of the shifting of the burden of proof the situation presented in the case before us is similar to that presented in a criminal case when the defense claims an alibi. At the outset in the criminal case the State has the burden of proof and the degree of proof is beyond a reasonable doubt. This burden, in the sense of risk of persuasion, remains with the State throughout the trial. However, if the respondent claims an alibi he has the burden of establishing that he was not at the place of the crime when it was committed and the degree of proof on this issue is a preponderance of the evidence. *State* v. *Hier,* 78 Vt. 488, 63 Atl. 877. It cannot be truly said that for this reason the burden of proof in the sense of burden of persuasion has been shifted to the respondent and that by claiming an alibi he is required to prove his innocence by a preponderance of the evidence. We have held that an instruction to the jury to the effect that proof of an alibi by a preponderance of the evidence required of the respondent when respondent makes such claim does not shift the burden of proof, is a correct statement of the law. *State* v. *Ward,* 61 Vt. 153, 169, 17 Atl. 483.

In the case of *State* v. *Ward, supra,* the court in charging upon the subject of an alibi claimed by the respondent instructed the jury as follows: ''The direct proof therefore offered to sustain an alibi is to be subjected to a rigid scrutiny, because standing by itself it does not attempt to control or rebut the evidence of facts sustaining the charge, but attempts to prove affirmatively another fact inconsistent with it. It is in direct conflict with all the evidence tending to show the guilt of the respondent, because in so far as that tends to show he committed the offense, it tends in the same degree to show he was at the place of the crime when committed. If therefore the proof of the alibi does not outweigh the proof that he was at the place when the crime was committed, it is not sufficient. In this conflict of evidence, as before stated, whatever tends to support one theory, tends in the same degree to rebut and overthrow the other, and it is for the jury to decide which is the truth.'' This was held to be a correct statement of the law. While the case of *State* v. *Ward, supra,* was a criminal case, nevertheless what was

said in the instruction to the jury as above quoted, since it was held to be a correct statement of the law, has much force upon the question as to whether in the case we are considering there has been a shifting of the burden of proof.

Here it is conceded that the child, Leonard Jones, was born in wedlock. Defendants seek to show such child is illegitimate and to establish illegitimacy defendants claim nonaccess of the husband. That is, the defendants seek to show that the husband was not present at the time when the child was begotten upon the body of Mary, Leonard's mother. In this case the plaintiff has the burden of establishing his case by a fair balance of the evidence. Upon the issue of nonaccess the defendants have the burden of proof and the degree of proof required is beyond a reasonable doubt. This claim of nonaccess standing by itself does not attempt to control or rebut the evidence upon which plaintiff relies to sustain his case, namely, birth in wedlock, but attempts to prove affirmatively another fact inconsistent with it, namely, that the husband was not present when the child was begotten. It is in direct conflict with plaintiff's evidence, namely, birth in wedlock, insofar as this fact has probative force tending to establish legitimacy. That is, just so far as birth in wedlock tends to show legitimacy, to this same extent it tends to show presence of the husband when the child was begotten. If, therefore, the proof of nonaccess does not outweigh the proof that the husband was present when the child was begotten it is not sufficient. In this conflict of evidence, whatever tends to support one theory tends in the same degree to rebut and overthrow the other, and it is for the jury to decide which is the truth. The burden of proof, that is, the risk of persuasion, remains with the plaintiff throughout the case and the degree of proof required of him is, as in most civil cases, preponderance of evidence. This burden has not shifted, even though the burden of establishing the issue of nonaccess is upon the defendants and the degree of proof of this issue is beyond a reasonable doubt. *State* v. *Ward, supra*; *State* v. *Hier, supra; Terryberry* v. *Woods,* 69 Vt. 94, 37 Atl. 239.

As to the suggestion of the author of the paragraph hereinbefore quoted from 33 Harvard Law Review, 308, that the function of the presumption may be considered as an exception to the general rule, it appears that the author reasons that we have

present either a presumption or a rule of substantive law, not both. This was true in the very early common law of England when no evidence could be received to show that a child born in wedlock was illegitimate. On the theory of Professor Wigmore, set forth in vol. 4, sec. 2492, of his work on Evidence, as hereinbefore quoted, it appears that under these circumstances strictly speaking we had no presumption present. There was only a rule of substantive law which provided that no evidence was material to meet the case established by proof of birth in wedlock and so none could be received. However, when this rule was relaxed and it was provided that while a child born in wedlock was presumed to be legitimate, yet this presumption might be rebutted by proof that the husband of the mother was impotent or beyond the four seas, we then had present both the presumption and the rule of substantive law. In other words, to state that the presumption of legitimacy may be rebutted is to recognize the existence and presence of the presumption. But the presumption itself makes no provision as to how it may be rebutted. To state that it may be rebutted by proof of nonaccess of the husband beyond a reasonable doubt is to recognize the existence of the rule of substantive law, stating how the presumption may be rebutted and fixing the degree of proof necessary to do so. That is, under the modern rule we have present both the presumption and the rule of substantive law which accompanies it, setting the standard as to how the presumption may be rebutted. While it is sometimes stated that the presumption of legitimacy, like the presumption of innocence, is sufficient to place the burden of proof upon him who asserts the contrary, this in strictness means that the presence of the presumption accounts for the presence of the rule of substantive law which accompanies it, but it is this rule and not the presumption which fixes the burden and degree of proof necessary to rebut it.

Many of the courts of our sister states have rendered decisions in harmony with the holdings of this Court in the case of *Tyrrell* v. *Prudential Insurance Company of America, supra,* concerning presumptions and their functions. We cite a few of them. New Hampshire: *Caswell* v. *Maplewood Garage,* 84 N. H. 241, 256, 149 Atl. 746, 73 A. L. R. 433; Massachusetts: *Duggan* v. *Bay State Ry. Co.,* 230 Mass. 370, 119 N. E. 757, L. R. A. 1918E, 680; Illinois: *Osborne* v. *Osborne et al.,* 325 Ill. 229, 156 N. E.

306; Michigan: *People* v. *Burbank,* 234 Mich. 600, 208 N. W. 687, 688; Iowa: *State* v. *Jones,* 64 Iowa, 349, 17 N. W. 911, 20 N. W. 470; Pennsylvania: *Keller* v. *Over et al.,* 136 Pa. St. 1, 20 Atl. 25; Wisconsin: *Spaulding* v. *Chicago & N. W. R. R. Co.,* 33 Wis. 582.

It will be helpful to examine subsequent decisions of the courts of the above mentioned states and note how the questions before us have been treated by them. In the New Hampshire case, *Saunders* v. *Fredette, supra,* plaintiff sought partition of a parcel of real estate devised to the defendant by defendant's husband, Edward Fredette. Plaintiff claimed to be a daughter of testator by a former wife and that not being mentioned in his will, she was entitled to share in testator's estate under the provisions of New Hampshire law. Defendant denied that she was the child of testator. Plaintiff produced record evidence of the marriage of her mother and testator and record evidence of her birth and rested. Considering the question of burden and degree of proof required from defendant to rebut the presumption of legitimacy, the court states: "Although there are authorities to the contrary (*Wright* v. *Hicks,* 12 Ga. 155, 160, 162, 56 Am. Dec. 451), the nearly universal opinion is that proof of nonaccess is not sustained by a mere balance of probabilities." Citing cases. Also after stating that the presumption of legitimacy is said to be one of the strongest known to the law, the court said: "This means that besides performing its essential function as a rule of evidence, the presumption, like that of innocence, is accompanied by another rule (of substantive law) fixing the required measure of proof. Thayer, Prelim. Treat. Ev. pp. 336, 337, 563, 576." However, this case holds it unnecessary to fix the standard as to the degree of proof of nonaccess for that state in that case because the evidence is sufficient to establish nonaccess whatever degree of persuasion may be required.

In a Massachusetts case, *Taylor* v. *Whittier et al.,* 240 Mass. 514, 138 N. E. 6, the court considered the question as to burden and degree of proof to rebut the presumption of legitimacy of a child born in wedlock. The defendants, appellants, relied upon the impotency of the mother's husband to show illegitimacy. In considering whether there was error in excluding certain offered evidence, the court said: "In view of the burden on the appellants to prove 'beyond all reasonable doubt' (*Phillips* v.

450

*Allen,* 2 Allen 453) the impotency of the testator in order to overcome the presumption of legitimacy, we find no reversible error in the exclusion of this testimony." To the same effect are *Sugrue et al.* v. *Crilley,* 329 Ill. 458, 160 N. E. 847; *Bassil* v. *Ford Motor Co.,* 278 Mich. 173, 270 N. W. 258, 107 A. L. R. 1491; *Wallace* v. *Wallace,* 137 Iowa, 37, 114 N. W. 527, 14 L. R. A. (N. S.) 544; *Commonwealth ex rel. Iacovella* v. *Iacovella,* 121 Pa. Super, 139, 182 Atl. 727; *Mink* v. *State,* 60 Wis. 583, 584, 19 N. W. 445, 50 A. R. 386.

For general discussion of questions as to proof necessary to establish illegitimacy of a child born to a married woman, see note in 36 L. R. A. (N. S.) beginning on page 255; also, see note in 8 A. L. R. beginning on page 430; also, case of *Patterson* v. *Gaines et ux.,* 6 Howard 550, 598, 12 L. ed. 553.

█ The rule which this Court laid down in the case of *Tyrrell* v. *Prudential Insurance Company of America,* as hereinbefore set forth, deals with presumptions and true it is that this rule applies to all presumptions, including the presumption of innocence. However, it appears from what has been hereinbefore stated that fixing the degree of proof and the placing of the burden thereof upon him who disputes the legitimacy of a child born in wedlock, is not accomplished by the presumption of legitimacy but by a rule of substantive law which accompanies it. Hence the rule laid down in the case of *Tyrrell* v. *Prudential Insurance Company of America, supra,* and which applies to presumptions, works no change upon this rule of substantive law. The rule works now with the same force and effect as before the decision in the Tyrrell case and dictates that whoever would dispute the legitimacy of a child born in wedlock has the burden of proving beyond a reasonable doubt the facts upon which he relies to establish his claim. It appears that the presumption of innocence, like the presumption of legitimacy, is accompanied by a rule of substantive law, fixing the burden and degree of proof necessary to rebut it. If defendants' reasoning applies in the case before us, it would also apply in a criminal case. Applying this reasoning to such a case the result is that by introducing any evidence the State has brought about a situation where it is entitled to a conviction upon proving its case by a fair balance of the evidence, but here again it is the rule of substantive law and not the presumption that places the burden and

fixes the degree of proof. This principle was recognized by this Court in the case of *State* v. *Lizotte*, 109 Vt. 378, 197 Atl. 396, 400. In this case the respondent excepted to the failure of the court to charge that "the respondent is presumed to be innocent until, on the evidence, the jury is convinced beyond a reasonable doubt that he is guilty." In dealing with this exception this Court stated: "The instruction which was fully given in this instance, that unless the respondent's guilt was proven beyond a reasonable doubt he was entitled to an acquittal, carried with it the necessary implication that he must be assumed to be innocent until this was done." Held that no error appeared in failure to give the requested instruction.

From the foregoing it follows that plaintiff's exceptions to the court's failure to charge as hereinbefore stated must be sustained because the law is that a child born in wedlock is presumed to be legitimate. This is a rebuttable presumption. When proof of nonaccess is relied upon to rebut the presumption, where the husband and wife are living apart, nonaccess may be shown by facts and circumstances. The proof need not go to the extent of showing it impossible that the husband was the father but the facts relied upon to rebut the presumption must be proven beyond a reasonable doubt.

We now consider plaintiff's exception to the court's refusal to grant his motion for a directed verdict made at the close of all the evidence. In doing this we must take the evidence in the light most favorable to the party against whom the motion is made. That is, in this case we must consider the evidence in the light most favorable to the defendants. *Pacific Lumber Agency* v. *National Aircraft Corp.*, 108 Vt. 10, 15, 182 Atl. 192; *Picknell* v. *Bean*, 99 Vt. 39, 41, 130 Atl. 578.

So considered the evidence tends to show that Mary Jones and Henry Jones were married in December, 1915. Mary Jones left her husband in September, 1922, and brought divorce proceedings soon thereafter, her petition being dated September 28, 1922. At the time of the separation and for some time before they had lived at Northfield Center. Henry Jones brought divorce proceedings against his wife Mary in October, 1922, his petition being dated October 7, 1922. After the separation Henry continued to live at Northfield Center until the time of his death. After leaving her husband Mary lived for a time in

Roxbury and later went to Montpelier to live. After the separation Mary was seen at one time at her husband's home near the barn where Henry was doing some work. She was not seen to go into the house. When this was, does not appear. On another occasion Mary was in Northfield Center and expressed an intention of going to see one of the Jones children, who was then living in that village. Henry had a bank account at a Montpelier bank and went to Montpelier on business occasionally while Mary was living there. They never lived together after the aforesaid separation. On August 19, 1923, plaintiff Leonard Jones was born to Mary. This was about eleven months after she had left her husband. The ordinary period of gestation for a child is nine calendar months and this may vary two weeks. The divorce petition of Henry Jones was granted at the September term of Washington county court in 1923. Mary never made any request upon Henry for assistance in the support of the child Leonard.

Standing thus we cannot say as a matter of law that there was no jury question here. There was some evidence tending to establish nonaccess as claimed by defendants. Whether such evidence was sufficient to so convince the jury beyond a reasonable doubt was for them to say. *State* v. *Field*, 95 Vt. 375, 380, 115 Atl. 206; *Partridge* v. *Cole*, 96 Vt. 281, 119 Atl. 398, 32 A. L. R. 854; *Cummings* v. *Town of Cambridge*, 93 Vt. 349, 107 Atl. 114. This exception is not sustained.

As to plaintiff's motion to set the verdict aside it appears that since there was prejudicial error in the charge the judgment cannot stand; therefore we give this question no further consideration.

The result is that

*Judgment is reversed and cause remanded.*